No. 105,132

STATE OF KANSAS, *Appellee*, v. PHILIP A. WOODARD, *Appellant*.

(280 P.3d 203)

Opinion filed July 13, 2012.

*David Scott Whinery*, of Whinery Law Office, of Liberty, Missouri, argued the cause and was on the brief for appellant.

*Casey L. Meyer*, assistant district attorney, argued the cause, and *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Philip A. Woodard appeals from the imposition of three life sentences with a mandatory minimum term of 25 years following his plea of guilty to three counts of aggravated indecent liberties with a child. He contends that the sentences constitute cruel and unusual punishment under the United States Constitution and Kansas Constitution. We disagree and affirm the sentences.

The State filed an amended information alleging in three counts that Woodard committed aggravated indecent liberties with his twin stepchildren over a period of 5 years, from 2004 to 2009. The aggravated indecent liberties charges consisted of lewd fondling or touching. The children were approximately 7 years old and Woodard was approximately 38 years old when the charged criminal activity began.

On March 25, 2010, Woodard tendered a plea of guilty to all three counts. The State agreed not to file additional charges against Woodard, and both sides reserved the right to file sentencing motions. The district court accepted the plea agreement.

Woodard filed a motion seeking a departure from the hard 25 life sentence applicable to his crimes under Jessica's Law, K.S.A. 21-4643(a)(1)(C). In his motion, he argued that the nonviolent, noncoercive, and noninvasive nature of the crimes mitigated in favor of a downward departure and that a life sentence violated Kansas and United States constitutional prohibitions on cruel and/or unusual punishment under the facts of his crimes. The State filed an extensive response, arguing that Woodard's criminal activity was extensive, lasted over a long period of time, and involved particularly vulnerable victims.

Following a hearing on the motion, the district court ruled the sentences were not unconstitutional, denied the motion for downward departure, and sentenced Woodard to three concurrent hard 25 life terms. Woodward now appeals both the constitutional and departure issues. Among other things, he contends that the hard 25 life sentence is cruel and/or unusual both as it applies to him and as a sentencing classification.

*A. Does Woodard's Sentence Constitute Cruel or Unusual Punishment?*

In determining whether a sentence is cruel or unusual, a district court must make both legal and factual inquiries. See, *e.g., State v. Ortega-Cadelan*, 287 Kan. 157, 160-61, 194 P.3d 1195 (2008). These inquiries invoke a bifurcated standard of review: without reweighing the evidence, the appellate court reviews the factual underpinnings of the district court's findings under a substantial competent evidence standard, and the district court's ultimate legal conclusion drawn from those facts is reviewed de novo. *State v. Gant*, 288 Kan. 76, 80, 201 P.3d 673 (2009); *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007).

A statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court has the authority and the duty to do so. *State v. Laturner*, 289 Kan. 727, 735, 218 P.3d 23 (2009); see also *State ex rel. Six v. Kansas Lottery*, 286 Kan. 557, 562, 186 P.3d 183 (2008) ("It is not the duty of this court to criticize the legislature or to substitute its view on economic or social policy; it is the duty of this court to safeguard the constitution.").

We begin our analysis with Woodard's federal constitutional challenge.

The Eighth Amendment to the United States Constitution prohibits inflicting cruel and unusual punishment. The Eighth Amendment has been extended to the states under the Fourteenth Amendment to the United States Constitution. See *Robinson v. California*, 370 U.S. 660, 667, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1962).

An Eighth Amendment challenge to a term-of-years sentence as disproportionate and therefore cruel and unusual falls into one of two general classifications. The first classification involves challenges that argue the term of years is grossly disproportionate given all the circumstances in a particular case. The second classification encompasses cases in which the court implements the proportionality standard by certain categorical restrictions. When conducting

an Eighth Amendment analysis to determine whether a term-of-years sentence is grossly disproportionate for a particular defendant's crime, a court begins by comparing the gravity of the offense and the severity of the sentence. This analysis may consider a particular offender's mental state and motive in committing the crime, the actual harm caused to the victim or to society by the offender's conduct, any prior criminal history, and a particular offender's propensity for violence. In the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual. *State v. Gomez*, 290 Kan. 858, Syl. ¶¶ 4, 5, 235 P.3d 1203 (2010).

The first classification is case-specific and " 'involves challenges that argue the term of years is grossly disproportionate given all the circumstances in a particular case. The second classification comprises cases in which the court implements the proportionality standard by certain categorical restrictions.' " *State v. Berriozabal*, 291 Kan. 568, 592, 243 P.3d 352 (2010) (quoting *Gomez*, 290 Kan. 858, Syl. ¶ 4).

Under the first classification, which is a threshold determination, this court is asked to determine whether Woodard's sentence is grossly disproportionate given the circumstances of his case.

The United States Supreme Court has held that the Eighth Amendment to the United States Constitution does not require strict proportionality between a crime and a sentence; rather, it forbids only an extreme sentence that is grossly disproportionate to the crime. *Ewing v. California*, 538 U.S. 11, 20-21, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003).

A number of factors persuaded the district court and persuade us that Woodard's sentences are not grossly disproportionate given the circumstances of the crimes. The abuse took place over a period of 5 years. Woodard enjoyed a special position of trust as the victims' stepfather. The sexual abuse did not stop until law enforcement intervened. Following his arrest, Woodard was diagnosed

with pedophilia. The victims' mother and grandmother informed the district court that the victims still had nightmares and were afraid of the dark as a consequence of the sexual abuse. The female victim spoke of "feeling dirty a lot," and both children had undergone counseling.

The legislative intent underlying Jessica's Law is to protect children by removing perpetrators of sex crimes against children from society. *State v. Spencer*, 291 Kan. 796, 823-24, 248 P.3d 256 (2011). The United States Supreme Court has observed that sex offenders represent a particularly serious threat in this country and that they are more likely than any other type of offender to commit violent crimes following their release. *McKune v. Lile*, 536 U.S. 24, 32-33, 122 S. Ct. 2017, 153 L. Ed. 2d 47 (2002). The State therefore has a particularly compelling interest in using incarceration as a means of protecting its youth from sexual offenders.

We conclude that Woodard's sentences are not grossly disproportionate to the crimes. We therefore do not proceed to the second classification for comparisons under Eighth Amendment analysis. See *Graham v. Florida*, 560 U.S. 48, 60-61, 130 S. Ct. 2011, 2022, 176 L. Ed 2d 825 (2010). Woodard's sentences do not violate the Eighth Amendment to the United States Constitution.

We next turn to Woodard's claim that his sentences violate § 9 of the Kansas Constitution Bill of Rights, which prohibits inflicting cruel or unusual punishment.

This court has set out a three-part test governing analysis of cruel or unusual punishment claims under § 9 of the Kansas Constitution Bill of Rights:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978).

No one factor controls. "Ultimately, one consideration may weigh so heavy that it directs the final conclusion," but "consideration should be given to each prong of the test." *Ortega-Cadelan*, 287 Kan. at 161.

The first prong of the *Freeman* test requires consideration of the nature of the offense and the character of the offender, with particular regard to the degree of danger present to society. The analysis of this prong closely tracks the analysis of the first classification under the Eighth Amendment to the United States Constitution. Our earlier analysis of the nature of Woodard's criminal activity and its consequences for his victims and society applies with equal force here. We conclude that the sentences do not violate § 9 of the Kansas Constitution Bill of Rights and *Freeman* as applied to Woodard.

The second prong of the *Freeman* test involves a comparison of Jessica's Law with the penalties for "more serious crimes" in Kansas. Woodard argues that his crime is less serious than homicide but is punished more severely.

This argument suffers from several flaws. In the first place, it assumes that murderers necessarily receive more lenient sentences in Kansas than violators of Jessica's Law. This is not the case. In fact, the Kansas Criminal Code sets out a list of transgressions that constitute capital murder, which is an off-grid offense. K.S.A. 21-3439. Capital murder is subject to punishment by death. K.S.A. 21-4624. The penalty for homicide in Kansas may thus be much more severe than the penalties under Jessica's Law. See K.S.A. 21-4638; K.S.A. 21-4643. The fact that the penalty for certain categories of homicide may be less severe than the penalties for other, nonhomicide crimes does not automatically render the penalties for the nonhomicide crimes unconstitutional. There is no strict linear order of criminal activity that ranks all homicides as the most serious crimes and all nonhomicide crimes as less serious, with the corresponding penalties necessarily ranking in diminishing durations of imprisonment.

Furthermore, as the State points out, Jessica's Law is not the only Kansas statute that provides for more severe penalties for nonhomicide crimes than for certain categories of homicide. Com-

pare, *e.g.*, rape, K.S.A. 21-3502, and aggravated kidnapping, K.S.A. 21-3420, which are severity level 1 offenses, with reckless second-degree murder, K.S.A. 21-3402(b), which is a severity level 2 offense.

The United States Supreme Court has held that a life sentence can be constitutional, even for a nonviolent property crime. See *Harmelin v. Michigan*, 501 U.S. 957, 962-64, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1990) (upholding sentence of life without possibility of parole for defendant convicted of possessing more than 650 grams of cocaine, although it was his first felony offense); *Rummel v. Estelle*, 445 U.S. 263, 274, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980) (upholding life sentence with possibility of parole, imposed under a Texas recidivist statute, for defendant convicted of obtaining $120.75 by false pretenses, an offense normally punishable by imprisonment for 2 to 20 years).

This court has held that a sentence of 18 years at hard labor for possession and sale of marijuana was not cruel and unusual punishment. *State v. Coutcher*, 198 Kan. 282, Syl. ¶ 4, 424 P.2d 865 (1967). In a case more similar to Woodard's, this court held that a sentence of a minimum of 80 years to a maximum of life for four counts of criminal indecent liberties with a child and three counts of aggravated criminal sodomy was not so oppressive that it constituted an abuse of discretion. *State v. Nunn*, 247 Kan. 576, Syl. ¶ 4, 802 P.2d 547 (1990).

Comparing the penalty under K.S.A. 21-4643(a)(1)(C) with the punishments imposed for other offenses in Kansas, we do not conclude that the penalty set out in Jessica's Law is disproportionately harsh.

The third part of the *Freeman* test calls on us to compare the penalty under Jessica's Law with the penalties for similar offenses in other jurisdictions. Such a comparison shows that the hard 25 life sentence is not out of proportion to sentences imposed for similar crimes in other states, which have withstood allegations of cruel and unusual punishment.

In *Adaway v. State*, 902 So. 2d 746 (Fla. 2005), the Florida Supreme Court upheld the constitutionality of a statute mandating life imprisonment without the possibility of parole for persons con-

victed of "capital sexual battery," a crime similar to aggravated indecent liberties with a child. In *Martin v. Commonwealth*, 493 S.W.2d 714 (Ky. App. 1973), the Kentucky Court of Appeals affirmed the imposition of life imprisonment without parole on a 24-year-old rape perpetrator. In *State v. Berniard*, 860 So. 2d 66 (La. App. 2003), the Louisiana Court of Appeals held that a mandatory sentence of life imprisonment was not excessive for aggravated rape. In *State v. Thorp*, 356 Mont. 150, 231 P.3d 1096 (2010), the Montana Supreme Court held that a sentence of life imprisonment without the possibility of parole for the crime of sexual intercourse without consent did not violate constitutional prohibitions against cruel and unusual punishment. In *State v. Green*, 348 N.C. 588, 502 S.E.2d 819 (1998), *cert. denied* 525 U.S. 1111 (1999), the court held that imposition of a mandatory life sentence on a juvenile defendant who was tried as an adult and convicted of first-degree sexual offense was not constitutionally excessive. Finally, in *State v. Alwinger*, 236 Or. App. 240, 236 P.3d 755 (2010), the court held that a mandatory 25-year prison term for a sexual offense against a child violated neither the United States nor the Oregon constitutional prohibitions against cruel and unusual punishment; see also *State v. Wiese*, 238 Or. App. 426, 241 P.3d 1210 (2010) (concurrent 25-year terms for sodomy and rape not disproportionate to offenses and not cruel and unusual); *State v. Meyrovich*, 204 Or. App. 385, 129 P.3d 729 (2006), *rev. denied* 340 Or. 673 (2006) (the Oregon Court of Appeals held that a life sentence was not disproportionate and not cruel and unusual for a repeat offender who forcibly kissed a woman on the neck).

This list, while not exhaustive, demonstrates that the Kansas sentencing scheme is not out of line with other jurisdictions. See generally Annot. 33 A.L.R.3d 335 (Length of sentence as violation of constitutional provisions prohibiting cruel and unusual punishment). Woodard concedes on appeal that he can cite to no jurisdiction that has found a sentence structured similarly to the Kansas version of Jessica's Law to be unconstitutional under either the federal or a state constitutional prohibition on cruel or unusual punishment.

We therefore conclude that Jessica's Law is not disproportionate with respect to punishments in other jurisdictions for similar crimes.

Woodard points out that the legislature could have chosen less onerous measures, such as electronic monitoring or civil confinement that might accomplish some of the societal goals of Jessica's Law. It is not necessary for us to evaluate or criticize those alternate measures of punishment because the choice of how this State should best respond to criminal conduct is a legislative, not a judicial, decision. See *Kansas Lottery*, 286 Kan. at 562.

B. *Did the District Court Commit Reversible Error When It Denied Woodard's Motion for Departure from the Hard 25 Life Sentence Applicable under Jessica's Law?*

Woodard argued to the district court that it should grant him a departure under K.S.A. 21-4643(d) because the degree of harm resulting from his criminal conduct was less than typical for aggravated indecent libertieshe did not engage in violence, he did not penetrate the children, and he did not induce them to perform sexual acts for him. The district court denied the motion and rejected Woodard's claims that the harm was less significant than in other cases of aggravated indecent liberties with a child.

The standard for reviewing a district court's denial of a motion to depart under K.S.A. 21-4643(d) is abuse of discretion. *State v. Hyche*, 293 Kan. 602, 605, 265 P.3d 1172 (2011).

The district court heard the testimony of the victims' mother and maternal grandmother, who described substantial trauma to the children and the family structures. The testimony emphasized the short- and long-term consequences of Woodard's abuse of the trust that the children and other family members had placed in him. In denying the motion to depart, the district court explicitly and at some length discussed the position of trust that Woodard exploited and the psychological harm to the victims.

This court has affirmed the denial of a motion to depart when the appellant and the victim had a relationship of great trust. *Hyche*, 293 Kan. at 606; *State v. Mendoza*, 292 Kan. 933, 936, 258

P.3d 383 (2011); *State v. Chavez*, 292 Kan. 464, 470, 254 P.3d 539 (2011); *State v. Trevino*, 290 Kan. 317, 323, 227 P.3d 951 (2010).

Although Woodard characterizes his conduct as "nonviolent," we disagree. Black's Law Dictionary defines a violent crime as "a crime that has as an element the use, attempted use, threatened use, or substantial risk of use of physical force against the person or property of another." Black's Law Dictionary 400 (8th ed. 2004). K.S.A. 22-3717(d)(2)(C) defines aggravated indecent liberties with a child under K.S.A. 21-3504(a) to be a sexually violent crime. This act of sexual violence includes "[a]ny lewd fondling or touching of the person of either the child or the offender," K.S.A. 21-3504(a)(3)(A), which describes the conduct to which Woodard pled guilty. Woodard committed three violent crimes.

The district court did not abuse its discretion in refusing to grant the departure sought by Woodard.

We affirm the district court's imposition of Woodard's sentences in the face of his claims of both constitutional violations and abuse of discretion.