No. 104,900

STATE OF KANSAS, *Appellee*, v. STACY ROBERT NEWCOMB, *Appellant*.

(298 P.3d 285)

Opinion filed March 22, 2013.

*Lydia Krebs*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Defendant Stacy Robert Newcomb appeals his convictions on one count of rape and one count of aggravated indecent

liberties for his conduct with his third-grade stepdaughter, as well as his two consecutive Jessica's Law hard 25 life sentences.

Newcomb argues: (1) Rape is an alternative means crime, and the State's proof of at least one of the means on which the jury was instructed was insufficient; (2) aggravated indecent liberties is an alternative means crime, and the State's proof of at least one of the means on which the jury was instructed was insufficient; (3) his Jessica's Law hard 25 life sentence for rape is disproportional under § 9 of the Bill of Rights of the Kansas Constitution; and (4) his Jessica's Law hard 25 life sentence for aggravated indecent liberties is disproportional under § 9.

We hold that none of Newcomb's arguments has merit, and we affirm his convictions and sentences.

## Factual and Procedural Background

Newcomb's 8-year-old stepdaughter, K.S., told her school friends that Newcomb had been touching her private parts and having sex with her. A mother of one of the friends learned of the allegation and called the police. After an investigation, the State charged Newcomb with two counts of aggravated indecent liberties with a child.

During Newcomb's preliminary hearing, the State presented evidence that Newcomb had penetrated K.S.'s vagina with his penis. Then the court, on its own motion, amended the first count to charge rape rather than aggravated indecent liberties.

At trial, K.S. testified that Newcomb touched her inappropriately, inserted his "wiener" into her "front butt," and fondled her in the bathtub and while they watched "inappropriate" movies. K.S. also testified that Newcomb told her not to tell anyone about the abuse.

Newcomb testified in his own defense and denied all of the allegations. After the jury found Newcomb guilty on both counts and before sentencing, Newcomb filed a motion challenging the constitutionality of Jessica's Law. The district court judge made factual findings under the three-part test enunciated in *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978), and determined that Jessica's Law was constitutional.

## DISCUSSION

### Rape as an Alternative Means Crime

Newcomb's first argument raises an issue of statutory interpretation. "Issues of statutory interpretation and construction, including issues of whether a statute creates alternative means, raise questions of law reviewable de novo on appeal." *State v. Brown*, 295 Kan. 181, 193-94, 284 P.3d 977 (2012).

A criminal defendant has a statutory right to a unanimous jury verdict. See K.S.A. 22-3421; *State v. Rojas-Marceleno*, 295 Kan. 525, Syl. ¶ 13, 285 P.3d 361 (2012); *State v. Wright*, 290 Kan. 194, 201, 224 P.3d 1159 (2010). In *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 (1994), this court explained:

> " 'In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to *guilt* for the single crime charged. Unanimity is not required, however, as to the *means* by which the crime was committed so long as substantial evidence supports each alternative means.' "

"Because jury unanimity is not required as to the means by which an alternative means crime is committed, unanimity instructions are not required in alternative means cases." *Rojas-Marceleno*, 295 Kan. at 544. Nevertheless, the State must meet a "supersufficiency of the evidence" requirement, *i.e.*, present sufficient evidence to permit a jury to find each means of committing the crime beyond a reasonable doubt. *Rojas-Marceleno*, 295 Kan. at 544. If the State fails to present sufficient evidence to support each means, reversal is required. *Rojas-Marceleno*, 295 Kan. at 544.

"Ordinarily, the first step in analyzing an alternative means case is to determine whether the case truly presents an alternative means issue." *Rojas-Marceleno*, 295 Kan. at 544. Not all statutory alternatives are alternative means. See *Rojas-Marceleno*, 295 Kan. at 544-45; *Brown*, 295 Kan. at 193 ("Identifying an alternative means statute is more complicated than spotting the word 'or.' "). " 'The mere use of a disjunctive in a statute does not an alternative means crime make.' " *Brown*, 295 Kan. at 193 (quoting *State v. Peterson*, 168 Wash. 2d 763, 770, 230 P.3d 588 [2010]).

K.S.A. 21-3502(a)(2) provides that "[r]ape is . . . sexual intercourse with a child who is under 14 years of age." Sexual inter-

course is defined under K.S.A. 21-3501(1) as "any penetration of the female sex organ by a finger, the male sex organ or any object." Newcomb argues that K.S.A. 21-3501(1) sets out three distinct ways of committing the crime of rape: penetrating a female victim's sex organ with (1) a finger, (2) the male sex organ, or (3) any object.

Newcomb argues that his conviction must be reversed because the State did not present any evidence that he penetrated K.S.'s vagina with his finger or any object that is neither his finger nor his penis.

This court rejected the same argument in *State v. Britt*, 295 Kan. 1018, 1027, 287 P.3d 905 (2012), where we said:

"The *actus reus* of the sexual intercourse reference in the rape statute is 'penetration.' The alternative methods of penetrating the female sex organ set forth in the statute—by a finger, the male sex organ, [] or an object—merely describe 'the factual circumstances in which a material element may be proven,' *i.e.*, the different ways in which penetration may occur. *Brown*, 295 Kan. at 196-97, 284 P.3d at 990. Thus, these are not alternative means, but merely options within a means, and the inclusion of this language in the jury instructions does not make this an alternative means case triggering concerns of jury unanimity." *Britt*, 295 Kan. at 1027.

*Britt* controls here. Newcomb is not entitled to reversal of his rape conviction, because rape is not an alternative means crime.

*Aggravated Indecent Liberties as an Alternative Means Crime*

Under K.S.A. 2010 Supp. 21-3504(a)(3)(A), aggravated indecent liberties with a child is defined as "[a]ny lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both."

Newcomb argues this statute required the State to present evidence that he acted with intent to arouse or satisfy both his sexual desires and K.S's sexual desires. Because the State did not prove that he acted with the intent to arouse or satisfy K.S.'s sexual desires, Newcomb contends, his conviction must be reversed.

Again, we have rejected Newcomb's argument. See *Britt*, 295 Kan. at 1026; *State v. Brown*, 295 Kan. at 202.

"[T]he phrase 'either the child or the offender, or both' under K.S.A. 21-3504(a)(3)(A) does not state a material element of the crime but merely describes

a secondary matter, the potential yet incidental objects of the offender's required intent. 295 Kan. at 202. Thus, the phrase outlines options within a means, and describes factual circumstances that may prove the distinct, material mental state element of the crime.

"Because the phrase 'either the child, the offender, or both' in K.S.A. 21-3504(a)(3)(A) does not state material elements of the crime, but merely outlines options within a means, the jury instruction reiterating these options did not include alternative means of committing the charge of aggravated indecent liberties." *Britt*, 295 Kan. at 1026.

Newcomb is not entitled to reversal of his aggravated indecent liberties conviction. Aggravated indecent liberties is not an alternative means crime.

*Jessica's Law Hard 25 Life Sentence for Rape under § 9*

When considering a § 9 case-specific proportionality challenge to a sentence, a district judge must make factual findings and draw conclusions of law. *State v. Woodard*, 294 Kan. 717, 720, 280 P.3d 203 (2012) (citing *State v. Ortega-Cadelan*, 287 Kan. 157, 160-161, 194 P.3d 1195 [2008]). "These inquiries invoke a bifurcated standard of review: without reweighing the evidence, the appellate court reviews the factual underpinnings of the district court's findings under a substantial competent evidence standard, and the district court's ultimate legal conclusion drawn from those facts is reviewed de novo." *Woodard*, 294 Kan. at 720.

"Under § 9 of the Kansas Constitution Bill of Rights, a punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." *State v. Gomez*, 290 Kan. 858, Syl. ¶ 9, 235 P.3d 1203 (2010). Whether a sentence is "cruel or unusual" under § 9 because of its length is controlled by a three-part test, first outlined in *State v. Freeman*, 223 Kan. at 367. This three-part test weighs the following:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." 223 Kan. at 367.

No single factor under the *Freeman* test controls the outcome. *State v. Berriozabal*, 291 Kan. 568, 591, 243 P.3d 352 (2010); *State v. Mondragon*, 289 Kan. 1158, 1163, 220 P.3d 369 (2009). "[C]onsideration should be given to each prong of the test." *Ortega-Cadelan*, 287 Kan. at 161. Still, in some cases, one factor may weigh so heavily that it directs the final conclusion. 287 Kan. at 161.

Here, under the first prong of the *Freeman* test, the district judge found that Newcomb was convicted of one count of rape and one count of aggravated indecent liberties with a child; the victim was his 8-year-old stepdaughter; Newcomb committed numerous sexual acts against the victim over a 4-month period; Newcomb had a prior California conviction for touching an 11-year-old girl's genitalia; K.S. was "placed in an atmosphere of fear in which she was forced to comply with Newcomb's criminal wishes"; Newcomb's crimes were ones of "extreme sexual violence," as defined by K.S.A. 21-4716(c)(2)(F)(i)(c); and Newcomb was the sole culpable person in the commission of the crimes. The district judge also stated that the penological purpose of Jessica's Law to protect society from sexual predators would be served in this case.

Newcomb does not make much of an issue over these findings on appeal, focusing on what he asserts was the State's failure to present "evidence that either of the crimes in the present case w[as] particularly violent." He notes, in particular, that there was no evidence K.S. "suffered any physical injuries as a result of either crime" and that he did not use a weapon as a tool of persuasion.

We have previously rejected this line of argument, see *State v. Seward*, No. 104,098, (this day filed), and we do so again here. Rape is among the crimes defined as sexually violent under K.S.A. 22-3717(d)(2)(A), and the rape of a child under 14 is a crime of "extreme sexual violence" under K.S.A. 21-4716(c)(2)(F)(i)(c).

That a sexually violent crime could have been committed more violently is legally insignificant, and the district judge's factual findings are supported by substantial competent evidence in the record. The first prong of the *Freeman* test does not weigh in Newcomb's favor on the rape count.

Under the second *Freeman* prong, the court compares Newcomb's sentence for rape with the penalties imposed for "more serious crimes" in Kansas. See *Freeman*, 223 Kan. at 367.

Newcomb argues that he "would have been 'better off,' " from a sentencing perspective, "had he murdered K.S." This court addressed an identical argument in *Woodard* in the context of aggravated indecent liberties with a child:

"This argument suffers from several flaws. In the first place, it assumes that murderers necessarily receive more lenient sentences in Kansas than violators of Jessica's Law. This is not the case. In fact, the Kansas Criminal Code sets out a list of transgressions that constitute capital murder, which is an off-grid offense. K.S.A. 21-3439. Capital murder is subject to punishment by death. K.S.A. 21-4624. The penalty for homicide in Kansas may thus be much more severe than the penalties under Jessica's Law. See K.S.A. 21-4638; K.S.A. 21-4643. The fact that the penalty for certain categories of homicide may be less severe than the penalties for other, nonhomicide crimes does not automatically render the penalties for the nonhomicide crimes unconstitutional. There is no strict linear order of criminal activity that ranks all homicides as the most serious crimes and all nonhomicide crimes as less serious, with the corresponding penalties necessarily ranking in diminishing durations of imprisonment.

"Furthermore, as the State points out, Jessica's Law is not the only Kansas statute that provides for more severe penalties for nonhomicide crimes than for certain categories of homicide. Compare, *e.g.*, rape, K.S.A. 21-3502, and aggravated kidnapping, K.S.A. 21-3420, which are severity level 1 offenses, with reckless second-degree murder, K.S.A. 21-3402(b), which is a severity level 2 offense." *Woodard*, 294 Kan. at 723-24.

We concluded in *Woodard* that the penalty for aggravated indecent liberties with a child was not disproportionately harsh when compared with the punishments imposed for more serious offenses in Kansas. *Woodard*, 294 Kan. at 724. We also have stated today in *Seward* that rape is undeniably a more invasive and serious crime than aggravated indecent liberties, and it thus follows from the decision in *Woodard* that the penalty for rape under Jessica's Law is not disproportionately harsh when compared with Kansas sen-

tences for homicide offenses. See *Seward,* No. 104,098, slip op. at 12; *Britt,* 295 Kan. at 1034-35. This holding from *Seward* controls here.

Also on the second *Freeman* prong, Newcomb asks us to consider a 2008 Kansas Sentencing Commission Proportionality Subcommittee's Report on Proposed Improvements and Modifications to Kansas Sentencing Laws. As explained in *Seward,* in which the defendant cited two such reports, this argument is unpersuasive. *Seward,* No. 104,098, slip op. at 12.

The second prong of the *Freeman* analysis does not favor Newcomb's argument that his Jessica's Law sentence for rape is unconstitutional under § 9.

The third prong of *Freeman* requires comparison of the penalty for rape under Jessica's Law and the penalties for the "same offense" in other jurisdictions. *Freeman,* 223 Kan. at 367. We fully discussed this prong of *Freeman* for the crime of rape under Jessica's Law in *Seward,* and no productive purpose would be served by repeating that discussion here. See *Seward,* 104,098, slip op. at 13-15. Suffice it to say that we reject Newcomb's argument on the third prong of *Freeman.*

Because none of the *Freeman* factors weighs in Newcomb's favor, we hold that the hard 25 life sentence he received for rape of his stepdaughter is not disproportional under § 9 of the Kansas Constitution Bill of Rights.

*Jessica's Law Hard 25 Life Sentence for Aggravated Indecent Liberties under § 9*

All of our analysis on the first *Freeman* prong for Newcomb's Jessica's Law sentence for rape is equally applicable to his Jessica's Law sentence for aggravated indecent liberties. The first prong weighs against him.

Likewise, to the extent Newcomb's arguments on the second prong of the *Freeman* test for his aggravated indecent liberties conviction mirror those for his rape conviction, we are unpersuaded.

Newcomb does advance an additional argument, however, that we must address: He asserts that his aggravated indecent liberties

sentence is suspect under the second *Freeman* prong because it is identical to his sentence for rape. Newcomb is correct that rape is a more serious, more invasive crime than aggravated indecent liberties. See *Seward*, 104,098, slip op. at 12; *Britt*, 295 Kan. at 10. But that is not the only requirement before Newcomb can claim § 9 protection under the second *Freeman* prong. The more serious crime to which his crime of conviction is compared must be punished "less severely," not exactly the same, as it was here. See *Freeman*, 223 Kan. at 367. Accordingly, Newcomb's argument fails.

On the third *Freeman* prong, Newcomb distinguishes between punishments for crimes involving "mere fondling," such as aggravated indecent liberties, from punishments for crimes involving "acts of penetration," such as rape or anal sodomy. Newcomb contends that Kansas' Jessica's Law statute is "the second harshest in the country as applied to mere fondling or touching, and [that Kansas is] one of only two states in the nation imposing a life sentence without the possibility of parole . . . in the absence of any aggravating factors."

In its brief, the State does not respond directly to Newcomb's specific contentions and citations about aggravated indecent liberties. It instead generally argues the incapacitation purpose of the adoption of Jessica's Law penalties nationwide. Its attachment of a National Conference of State Legislatures' table provides little detail about the exact offenses in other states that would be considered the "same," as *Freeman* requires. See *Seward*, 104,098, slip op. at 13 (discussing "same" versus "similar"). And its citation to an Internet website appears to be out of date and inaccessible. The State reasons as follows:

"Some 42 states have passed a version of Jessica's Law and a common thread is a twenty-five year mandatory minimum for *certain sex crimes* against children . . . . Direct comparisons are difficult because each state defines crimes differently, has different sentencing procedures, different sentencing methods (*e.g.*, indeterminate ranges, guideline ranges, fixed terms, etc.), and different parole and postrelease rules and procedures. But, despite Defendant's arguments, even the analysis in his own brief shows a minimum sentence of 25 years for Defendant's crimes is not out of synch with the sentences for *similar* crimes in other states." (Emphases added.)

The State's casual approach compels us to accept, for purposes of argument in this case, Newcomb's assertion that Kansas has one of the harshest penalties in the nation for indecent liberties committed by an adult against a child younger than 14, which means that the third prong of the *Freeman* test favors his § 9 challenge.

However, Newcomb's persuasive force on the third prong does not counterbalance the first and second prongs. Among other things, Newcomb's previous out-of-state conviction for almost exactly the type of lewd touching for which he was prosecuted here, his choice to pervert his position of trust and authority as K.S.' stepfather, and his repeated predations over the course of several months place him at the more culpable end of the spectrum of offenders convicted of aggravated indecent liberties under Jessica's Law. We therefore hold that the district judge did not err in rejecting Newcomb's challenge to the proportionality of his hard 25 life sentence for aggravated indecent liberties under Jessica's Law.

## CONCLUSION

Each of defendant Stacy Robert Newcomb's four claims on this appeal lacks merit. Our statutes prohibiting rape and aggravated indecent liberties do not create alternative means crimes. And his sentences for those crimes are not disproportional under § 9 of the Kansas Constitution Bill of Rights.

The judgment of the district court is affirmed.