No. 105,050

STATE OF KANSAS, *Appellee*, v. ROBERT MILLER, *Appellant*.

(304 P.3d 1221)

*Lydia Krebs*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Robert Miller appeals his convictions of one count of rape and two counts of aggravated indecent liberties with a child, arguing that the State failed to present sufficient evidence at trial to prove the various alternative means of committing each crime. He also argues that his three concurrent hard 25 life sentences violate § 9 of the Kansas Constitution Bill of Rights. Based on our recent decisions addressing each of these issues, we reject Miller's arguments and affirm.

## FACTS

Three young girls, two of whom are Miller's daughters by different mothers and a third who is the half-sister of one of those girls, made separate statements to their mothers and to investigators that Miller had engaged in sexual conduct with them by either touching them on their genitalia or inserting a finger into their vaginas.

The State charged Miller with one count of rape committed against 4-year-old S.M.M., one count of aggravated indecent liberties with a child committed against 7-year-old D.M.S., and one count of aggravated indecent liberties committed against 5-year-old M.M.S. A jury found Miller guilty of all three counts. The district court, pursuant to Jessica's Law, see K.S.A. 21-4643, sentenced him to three concurrent terms of life imprisonment without the possibility of parole for 25 years. In doing so, the court over-

ruled Miller's motion seeking to declare the lifetime sentencing provisions of K.S.A. 21-4643 unconstitutional. Miller filed a timely appeal.

### ALTERNATIVE MEANS

Whether a statute creates an alternative means is a question of law subject to de novo review. *State v. Brown*, 295 Kan. 181, Syl. ¶ 6, 284 P.3d 977 (2012).

Miller initially challenges his conviction of rape under K.S.A. 21-3502(a)(2), which defines rapes as "sexual intercourse with a child who is under 14 years of age." K.S.A. 21-3501(1) defines the term "sexual intercourse" as penetration by a "finger, the male sex organ or any object." Miller argues that this definition establishes three alternative methods of engaging in sexual intercourse, resulting in three alternative methods of committing rape under K.S.A. 21-3502(a)(2). Accordingly, he argues that his conviction for rape should be reversed because the State failed to prove each of the three alternative methods of engaging in sexual intercourse.

This issue was decided against Miller in *State v. Britt*, 295 Kan. 1018, 1027, 287 P.3d 905 (2012), where we stated:

"The alternative methods of penetrating the female sex organ set forth in the statute—by a finger, the male sex organ, and or an object—merely describe 'the factual circumstances in which a material element may be proven,' *i.e.*, the different ways in which penetration may occur. [Citation omitted.] Thus, these are not alternative means, but options within a means and the inclusion of this language in the jury instructions does not make this an alternative means case triggering concerns of jury unanimity."

As such, Miller is not entitled to a reversal of his rape conviction.

Miller next challenges his two convictions for aggravated indecent liberties with a child under K.S.A. 21-3504(a)(3)(A), which defines the crime as any lewd fondling or touching of either the child or the defendant "with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both." Miller argues that K.S.A. 21-3504(a)(3)(A) required the State to present evidence that he acted with the intent to arouse or satisfy both his sexual desires and those of D.M.S. and M.M.S. Because the State

failed to do so, he argues that his two convictions for aggravated indecent liberties with a child must be reversed.

This issue was also resolved against Miller in *Britt*, where this court held:

"[T]he phrase 'either the child or the offender, or both' under K.S.A. 21-3504 (a)(3)(A) does not state a material element of the crime [of aggravated indecent liberties with a child] but merely describes a secondary matter, the potential yet incidental objects of the offender's required intent. [Citation omitted.] Thus, the phrase outlines options within a means, and describes factual circumstances that may prove the distinct, material mental state element of the crime." *Britt*, 295 Kan. at 1026.

Accordingly, Miller's alternative means argument regarding his convictions for aggravated indecent liberties with a child is also without merit.

## CRUEL OR UNUSUAL PUNISHMENT

Next, Miller contends that his three concurrent hard 25 life sentences violate the prohibition against the infliction of cruel or unusual punishment found in § 9 of the Kansas Constitution Bill of Rights.

When determining whether a sentence is constitutionally prohibited because it is cruel or unusual, this court applies a bifurcated standard of review: Without reweighing the evidence, the court reviews the factual underpinnings of the district court's findings under a substantial competent evidence standard and then reviews de novo the ultimate legal conclusion drawn from those facts. *State v. Gant*, 288 Kan. 76, 80, 201 P.3d 673 (2009); *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007). A statute is presumed to be constitutional and all doubts are resolved in favor of its validity. If there is a reasonable way to construe the statute as constitutionally valid, the court has the duty to do so. *State v. Laturner*, 289 Kan. 727, 735, 218 P.3d 23 (2009).

When considering constitutional challenges under § 9 of the Kansas Constitution Bill of Rights, this court applies the three-part test articulated in *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978):

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense."

No one factor of the *Freeman* test controls. "Ultimately, one consideration may weigh so heavily that it directs the final conclusion. Before that conclusion is reached, however, consideration should be given to each prong of the test." *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 (2008).

With respect to the first *Freeman* factor, the district court made the following findings:

"The court, short of a, of offenses involving the death of a human being, cannot contemplate more serious or dangerous crimes that exist in our society; that being sexual assaults of young children, in this particular case who were 4, 7, and 5 years of age. In the court's view even worse, that they were biological offspring of the defendant.

"So we have three children who are not only scarred sexually, but their entire lives are going to be dealing with the issue of how to trust and love anyone when their own father does such acts to them.

"You look at the victim statements of the children. One, thoughts of what he did pop into my head a lot. I have nightmares about Robert almost every night.

"The second one, I'm sad and mad and scared about what my dad did. I think about it a lot and it really upsets me. I try to play all the time so I don't have to think about it. I have scary dreams about him.

"The other family wrote a statement hoping that the child would not be affected in the future to come, and they were certainly angry about what had been done.

"So certainly the nature of the offense, the fact we have three victims, that the third victim occurred even after the issue had been raised or concerns raised with prior children. The court in, considers this to be a violent offense. Statutorily it's considered a violent sexual offense.

"The extent of culpability is certainly, for the injury resulting is caused by the acts of the defendant. And the penological purposes of the prescribed punishment are to see that no further children suffer the same acts that were perpetrated in this case."

On appeal, Miller points out that he had no prior criminal history, that his intelligence is low to the point of borderline mental retardation, and that, while the crimes are legally defined as violent, he did not engage in violence in perpetrating them. These considerations do not, however, address the serious nature of the crimes and the consequences to the victims, which are appropriate ways of analyzing the first *Freeman* factor.

Miller was the father of two of the victims and stepfather of the third and therefore held a position of trust, which he violated to the significant harm of his victims. See *Britt*, 295 Kan. at 1033; *State v. Woodard*, 294 Kan. 717, 721, 280 P.3d 203 (2012) (stepparent's trust relationship with victim supports imposition of life sentence). The criminal conduct continued even when reports of his abuse of two of the children had come to light. Such continuing conduct also supports imposition of life sentences. See *Britt*, 295 Kan. at 1033; *Woodard*, 294 Kan. at 721. The first *Freeman* factor relates more to the danger posed to society than to sympathetic aspects of defendant's circumstances. Miller's ongoing willingness to exploit the trust of his children at the expense of their emotional and physical security suggests a substantial risk to society as a whole and does not operate against the constitutionality of his sentence.

The second *Freeman* factor directs the court to compare the sentences for rape and aggravated indecent liberties with a child with the sentences for other crimes in this state. Miller points out that penalties for certain classifications of murder are less severe than his hard 25 life sentences. This court has consistently rejected the argument that sex crimes against children must be punished less severely than homicides. See *State v. Seward*, 296 Kan. 979, 987-88, 297 P.3d 272, 279-80 (2013); *Britt*, 295 Kan. at 1033-35; *Woodard*, 294 Kan. at 723-24; *State v. Mossman*, 294 Kan. 901, 912-13, 281 P.3d 153 (2012).

With regard to the third *Freeman* factor as it relates specifically to the crime of rape, we concluded in *Seward* that Kansas does not have the harshest penalty in the nation for the crime of rape committed by an adult against a child younger than 14. *Seward*, 296 Kan. at 990. Consequently, because none of the *Freeman* factors favor a conclusion that Miller's hard 25 life sentence for rape vio-

lates § 9 of the Kansas Constitution Bill or Rights, his challenge to this portion of his sentence must fail.

For the crime of aggravated indecent liberties with a child, in *State v. Newcomb*, 296 Kan. 1012, 1021, 298 P.3d 285, 292 (2013), we accepted for purposes of argument in that case that Kansas has one of the harshest penalties in the nation for that crime when committed by an adult against a child younger than 14 years of age. We concluded that this resulted in the third factor of the *Freeman* test favoring the defendant's § 9 challenge to his hard 25 life sentence for aggravated indecent liberties with a child. But we also concluded that "persuasive force on the third prong does not counterbalance the first and second prongs." 296 Kan. at 1021. Notably, in relation to the first prong, we pointed to the defendant's decision "to pervert his position of trust and authority as [the victim's] stepfather." 296 Kan. at 1021. We also noted that the abuse took place "over the course of several months," which we concluded placed the defendant "at the more culpable end of the spectrum of offenders convicted of aggravated indecent liberties under Jessica's Law." 296 Kan. at 1021. With regard to the second prong, we rejected the defendant's argument that sex crimes against children must be punished less severely than homicides. 296 Kan. at 1021. Accordingly, we rejected the defendant's argument that his sentence for aggravated indecent liberties with a minor was disproportional under § 9 of the Kansas Constitution Bill of Rights. 296 Kan. at 1021.

The same reasoning is applicable here. Even if we accept for purposes of argument in this case that Kansas imposes one of the harshest penalties in the nation upon an adult who commits aggravated indecent liberties with a child younger than 14, thereby resulting in the third *Freeman* factor favoring Miller's sentencing challenge, we would still conclude that the persuasive force on the third factor does not counterbalance the first and second factors. With respect to the first factor, like the defendant in *Newcomb*, Miller abused his position of trust and authority as the father of D.M.S. and M.M.S. and the stepfather of S.M.M. Additionally, Miller's criminal conduct continued even when reports that he abused two of the children had come to light. Accordingly, we

conclude, as we did in *Newcomb*, that Miller's conduct places him "at the more culpable end of the spectrum of offenders convicted of aggravated indecent liberties under Jessica's Law." 296 Kan. at 1021. Because Miller raises the same argument regarding the second *Freeman* factor that was rejected in *Newcomb*, we reach the same conclusion here as we did in *Newcomb*: Miller's sentences for aggravated indecent liberties with a child do not violate § 9 of the Kansas Constitution Bill of Rights.

We therefore hold that the district court did not err in rejecting Miller's challenge to the proportionality of his three concurrent hard 25 life sentences for rape and aggravated indecent liberties with a child.

Affirmed.