NOT DESIGNATED FOR PUBLICATION

No. 116,018

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ALEJANDRO GARCIA-GOMEZ,
*Appellant,*

v.

STATE OF KANSAS,
*Appellee.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed August 11, 2017. Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., MALONE, J., and HEBERT, S.J.

*Per Curiam*: This is an appeal of the district court's denial of a K.S.A. 60-1507 motion filed by Alejandro Garcia-Gomez. On appeal, Garcia-Gomez claims the district court erred when it ruled his motion was untimely filed and there was no showing of manifest injustice to excuse the late filing. Upon our review of the pro se motion, the record on appeal, and appellate briefs, we find no error and affirm the ruling of the district court.

1

Our court has previously summarized the facts of this case and the litigation history that preceded the filing of this motion in *State v. Gomez*, No. 107,936, 2013 WL 3970182, at \*1-2 (Kan. App. 2013) (unpublished opinion):

"Alejandro Gomez was babysitting A.M., his ex-girlfriend's daughter, on the evening of January 21, 2007. A.M. told investigators Gomez carried her from her bedroom to the living room, where he 'touched her with his hand and his penis.' She further 'clarified that he put his penis in her vagina, not just between her legs.' A.M. also told investigators Gomez had touched her 'with just his hands' on a previous occasion.

"Gomez was charged with rape in violation of K.S.A. 2006 Supp. 21-3502(a)(2), but an amended complaint charged him with aggravated indecent liberties with a child in violation of K.S.A. 2006 Supp. 21-3504(a)(3). . . . Gomez entered into a plea agreement and pled guilty to the amended charge. At the plea hearing, the district court verified that Gomez understood his rights and the potential consequences of his plea. The district court also verified the factual basis for the plea . . . .

. . . .

"Gomez was then sentenced to a term of imprisonment for life with no possibility of parole for 25 years and 'lifetime electronic monitoring.' . . .

"In Gomez' direct appeal, he argued lifetime sentences for sex crimes were disproportionate and constituted cruel and unusual punishment under the Eighth Amendment to the United States Constitution and under Section 9 of the Kansas Constitution Bill of Rights. Our Supreme Court affirmed . . . .

"Immediately after the Supreme Court denied his direct appeal, Gomez filed a motion to correct an illegal sentence. Gomez argued the district court 'did not make a specific inquiry into the defendant's age at the time of the alleged offense, and therefore

2

cannot sentence the defendant to anything more than what was admitted by the defendant.'"

The district court denied Gomez' motion and he appealed. After considering Gomez' claims on appeal, our court affirmed the sentence. *Gomez*, 2013 WL 3970182, at *4.

On February 2, 2015, Garcia-Gomez filed a pro se K.S.A. 60-1507 motion that is the subject of this appeal. He raised ineffective assistance of trial counsel claims, and he also asserted that his appellate counsel was ineffective for not raising those claims. On March 30, 2016, after appointing counsel for Garcia-Gomez and holding a preliminary hearing on the motion, the district court denied it. In particular, the district court found the motion was time barred with no showing of manifest injustice to justify an extension of the time limit provided in K.S.A. 60-1507(f). That same day, Garcia-Gomez filed a timely notice of appeal.

ANALYSIS

On appeal, Garcia-Gomez contends "[t]he district court erred in dismissing Mr. Garcia-Gomez' petition because he has presented a manifest injustice that warrants review." The State counters that the "motion was filed well after the one-year time limitation for such filings. The district court did not err in denying the motion as untimely, as consideration of the motion was not necessary to prevent a manifest injustice."

When considering a K.S.A. 60-1507 motion the district court has three options:

"'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no

3

substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citation omitted.]" *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

In the present case, the district court employed the second option, appointed counsel for Garcia-Gomez, and conducted a preliminary hearing prior to denying the motion. As a result, an appellate court is in just as good a position as the district court to consider the merits of the motion. Under these circumstances, our review is de novo. *Grossman v. State*, 300 Kan. 1058, 1061, 337 P.3d 687 (2014).

As a general rule, a K.S.A. 60-1507 motion must be filed within 1 year of the final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction. K.S.A. 2016 Supp. 60-1507(f)(1). In this case, our Supreme Court filed its opinion regarding Garcia-Gomez' direct appeal on July 9, 2010. See *State v. Gomez*, 290 Kan. 858, 860, 235 P.3d 1203 (2010). However, Garcia-Gomez did not file his K.S.A. 60-1507 motion until February 2, 2015. As a result, Garcia-Gomez concedes that his motion was untimely but he argues that under K.S.A. 2016 Supp. 60-1507(f)(2) the 1-year time limitation may be extended to prevent manifest injustice.

The critical issue on appeal, therefore, is whether Garcia-Gomez made a sufficient showing that the district court erred because it should have considered his untimely motion to avoid a manifest injustice.

Importantly, on appeal, Garcia-Gomez acknowledges that on July 1, 2016, our legislature amended K.S.A. 60-1507 by adding, in part, the following language to subsection (f)(2):

4

"(A) For purposes of finding manifest injustice under this section, *the court's inquiry shall be limited to determining why the prisoner failed to file the motion within the one-year time limitation or whether the prisoner makes a colorable claim of actual innocence*. As used herein, the term actual innocence requires the prisoner to show it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence." (Emphasis added.) K.S.A. 2016 Supp. 60-1507(f)(2)(A); L. 2016, ch. 58, sec. 2.

Prior to the amendment, our Supreme Court had set forth a three-factor standard to be employed by Kansas courts in determining whether a movant had made a sufficient case for manifest injustice. *Vontress v. State*, 299 Kan. 607, 616-17, 325 P.3d 1114 (2014). When considering whether the 1-year time limitation should be extended to prevent a manifest injustice, our Supreme Court advised that the totality of the circumstances should be considered in light of the following three factors:

"(1) the movant provides persuasive reasons or circumstances that prevented him or her from filing the 60-1507 motion within the 1-year time limitation; (2) the merits of the movant's claim raise substantial issues of law or fact deserving of the district court's consideration; and (3) the movant sets forth a colorable claim of actual innocence, *i.e.*, factual, not legal, innocence." 299 Kan. at 616.

As is readily apparent, the 2016 amendment eliminated the second factor of the *Vontress* test while statutorily adopting the first and third factors. The 2016 amendment, therefore, narrowed the focus of a Kansas court's inquiry into the matter of manifest injustice.

As noted earlier, Garcia-Gomez filed his motion on February 2, 2015, and the district court held the preliminary hearing and denied the motion on December 15, 2015—both events which were subsequent to *Vontress* but prior to the July 1, 2016, amendment. As a result, the district court considered the *Vontress* standards in making its ruling. Both appellate briefs, however, were filed subsequent to the 2016 amendment and

while both parties mention *Vontress*, they argue as if the 2016 amendment is applicable rather than the *Vontress* standards.

The newly amended version of K.S.A. 2016 Supp. 60-1507(f) does not indicate whether the legislature intended the amendment to apply prospectively or retrospectively. Statutory interpretation is a question of law subject to unlimited appellate review. *Dester v. Dester*, 50 Kan. App. 2d 914, 917, 335 P.3d 119 (2014). As a general rule, a statute operates prospectively unless: (1) the statutory language clearly indicates the legislature intended the statute to operate retrospectively, or (2) the change is procedural or remedial in nature. See *State v. Bernhardt*, 304 Kan. 460, 479, 372 P.3d 1161 (2016); *Norris v. Kansas Employment Security Bd. of Review*, 303 Kan. 834, 841, 367 P.3d 1252 (2016). Importantly, under either exception, however, the statute may not be applied retrospectively if it would prejudicially affect a party's substantive or vested rights. *Bernhardt*, 304 Kan. at 479.

On at least three occasions, panels of our court have held that the 2016 amendment to K.S.A. 2016 Supp. 60-1507 applies retroactively because the amendment is procedural. See *Rojas-Marceleno v. State*, No. 115,140, 2017 WL 1196731, at *4 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* May 1, 2017; *Olga v. State*, No. 115,334, 2017 WL 840296, at *3 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* April 3, 2017; *Perry v. State*, No. 115,073, 2017 WL 462659, at *2-3 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* March 2, 2017. However, at least one panel declined to address whether the amendment to K.S.A. 2016 Supp. 60-1507 applies retroactively because the K.S.A. 60-1507 motion at issue failed under the less restrictive preamendment test. *Robinson v. State*, No. 115,555, 2017 WL 2494964, at *3-6 (Kan. App. 2017) (unpublished opinion).

Given the parties' arguments on appeal, we will consider the question of manifest injustice by applying the 2016 amendment to K.S.A. 2016 Supp. 60-1507. Given the

6

parties' arguments below and the district court's ruling, however, we will also analyze the second factor of the *Vontress* test—whether the merits of Garcia-Gomez' claim raise substantial issues of law or fact that deserved the district court's consideration.

*What Are the Reasons for the Failure to File the Motion in a Timely Manner?*

In his K.S.A. 60-1507 motion, Garcia-Gomez alleged that he had not previously presented his claims because: "I am a [c]itizen of Mexico. I do not understand my rights. I am given no material in Spanish to help me in my legal work in preparing anything. I am an innocent man." In response, the State argued that "[Garcia-Gomez] alleges that he is not knowledgeable in the law and has language barriers but fails to acknowledge that these alleged barriers did not prevent him from filing two motions to correct illegal sentence and from filing extensive 1507 pleadings."

The parties reprise their arguments on appeal. The State adds that "[t]ellingly, none of the issues in the 1507 motion are based on information that movant would not have been aware of within one year of the termination of his direct appeal."

In addressing this first factor the district judge found "there is no reason why these issues that are being raised here today could not have been raised within the one-year limitation." We agree.

Garcia-Gomez knew or should have known of his trial and appellate counsel's alleged inadequacies by the summer of 2011, about 1 year after our Supreme Court's opinion in his direct appeal. Garcia-Gomez primarily complains about how his trial counsel handled his plea and sentencing, yet over 3 years passed from the date of our Supreme Court's opinion in the direct appeal before he initiated this particular litigation. The subject matter of Garcia-Gomez' complaints were or should have been known to him years before he filed this motion. Garcia-Gomez does not claim surprise or newly

7

discovered evidence. Moreover, the State's argument that Garcia-Gomez had the knowledge and ability to file other legal pleadings in the years following his conviction and sentence clearly suggests that he was able to overcome any language difficulties in order to file pleadings in a timely fashion. We find that Garcia-Gomez has not shown any persuasive reasons for the untimely filing of his K.S.A. 60-1507 motion.

*Do the Merits of the Claims Raise Substantial Issues of Law or Fact?*

Prior to the preliminary hearing on his motion, Garcia-Gomez' attorney filed a pretrial questionnaire stating the nature of his claims. With regard to ineffective assistance of trial counsel, Garcia-Gomez asserted that his trial counsel misled him because he suggested that if he pled guilty "he would likely receive a grid sentence of 55-61 months, rather than the life sentence he received." Second, Garcia-Gomez claimed his trial counsel failed to investigate his defense that he was innocent of the crimes charged and he only confessed because he was "coerced by the police, and as a citizen of Mexico, did not understand the implications of confessing." Finally, it was alleged that trial counsel did not preserve arguments attacking Garcia-Gomez' life sentence as being cruel and unusual punishment. With regard to appellate counsel, Garcia-Gomez claimed ineffectiveness for the failure to raise the issue of cruel and unusual punishment on appeal.

For its part, the State argued that Garcia-Gomez was fully informed of the potential to receive a life sentence rather than a downward durational departure. Additionally, "[a]lthough he now claims a coerced confession and to not understanding his rights, [Garcia-Gomez] acknowledges that he confessed to the crime, that he was informed of his constitutional rights before entering his plea, and that he waived those rights."

8

With regard to the constitutionality of his sentence, the State acknowledged that our Supreme Court found, on direct appeal, that Garcia-Gomez had not preserved or had abandoned the issue of the disproportionality of his sentence as cruel and unusual punishment under the United State and Kansas Constitutions. However, the State cited *State v. Newcomb*, 296 Kan. 1012, 1021, 298 P.3d 285 (2013) (finding that a life sentence for aggravated indecent liberties with an 8-year-old child is not disproportionate under the Kansas Constitution), and *State v. Woodard*, 294 Kan. 717, 727, 280 P.3d 203 (2012) (finding that a life sentence for aggravated indecent liberties involving two 7-year-old victims is not disproportionate under the United States or Kansas Constitutions), as authority that Garcia-Gomez' sentence did not violate the cruel and/or unusual punishment clauses of the United States and Kansas Constitutions. As a result, the State argued that no ineffectiveness was shown by the failure of trial or appellate counsel to properly preserve or present a challenge to the constitutionality of Garcia-Gomez' sentence.

The district court made lengthy and detailed findings at the completion of the preliminary hearing. With regard to Garcia-Gomez' claim that his trial attorney misled him into believing that he would receive a departure sentence of 55 to 61 months, the district judge stated:

> "The plea agreement in this case made it very clear that the sentence that the defendant was facing was a possibility of life. And it said it in more than one place in bold underlined language, that the possible sentence was a life sentence, and that there was no guarantee that he would receive a departure sentence.
> "At the plea hearing . . . the defendant, when asked if he was satisfied with his attorney, answered, Yes. It asked if he had reviewed [the] plea agreement. He said he had with his attorney, and that he understood what the plea agreement said."

9

The district court also took notice of the district judge's findings made in ruling on Garcia-Gomez' motion to correct illegal sentence. At that hearing, the district judge noted that the district judge who accepted the plea

"informed [Garcia-Gomez] he faced a life sentence with parole eligibility after 25 years. He made it clear to the defendant that there was no guarantee that he would ever be granted parole. He made it clear that the District Attorney was going to recommend a life sentence. He went on to note the language in the plea agreement, specifically noting to the defendant, that the sentencing judge did not have to grant a departure and could impose a life sentence."

Upon the district judge's own review of the plea hearing transcript, he concluded:

"And I would make those same findings, is that that was made clear, that Mr. Garcia-Gomez was never promised a departure sentence. And that it was made clear to him that the possibility that he would face a life sentence was very, very, clearly made to Mr. Garcia-Gomez at the time of his plea."

Still, the district judge said that trial counsel's strategy to seek a durational departure sentence made sense because Garcia-Gomez "had departure factors that are oftentimes successful. The lack of a criminal history, the taking responsibility, which [are] some of the arguments that were made. Accepting responsibility and remorse for his actions, which have been successful arguments before for departure factors."

With regard to Garcia-Gomez' allegation that his attorney was ineffective for not challenging his coerced confession to the police, the district court found: "This is the first time that this issue has been raised by the defendant." The district court found that Garcia-Gomez "gave a statement of admission to a detective after being provided with an interpreter and a Spanish Miranda form, too." As a result, the district court found this

claim was based on conclusory statements and did not raise a substantial issue of law or fact.

Finally, with regard to Garcia-Gomez' claim that his trial and appellate attorneys were ineffective by failing to raise the issue of whether his sentence violated the United States and Kansas Constitutions, the district court adopted the legal citations proffered by the State and concluded that "issue has been resolved by our Kansas Supreme Court and is not an issue that raises a substantial issue of law or fact deserving of the Court's consideration."

On appeal, the parties once again make their arguments which they made in the district court. Upon our review of the district court's findings of fact and conclusions of law pertaining to the merits of the claims raised by Garcia-Gomez, we find no error. The district court's factual findings are supported by the record and its legal conclusions, based on those factual findings, are correct. We conclude that Garcia-Gomez has not presented substantial issues of law or fact in this motion.

*Does the Motion Set Forth a Colorable Claim of Actual Innocence?*

In his pro se motion, Garcia-Gomez asserted that "he is an innocent man being forced to serve a sentence for a crime that never occurred. That he at no time committed the crime of aggravated indecent liberties." On appeal, Garcia-Gomez' argument is limited to one sentence, that "he never committed the acts for which he was accused." In response, the State counters: "In his motion, while [Garcia-Gomez] claimed that he was innocent on multiple occasions, these references were purely conclusory in nature. [He] pointed to no new evidence that had come to light since he pled guilty."

11

The district judge found

> "there is nothing in the record in his motion other than his own conclusory statements that he didn't do what he is charged with. Even though in his plea agreement, part of his argument that he was making to the court is that he accepted responsibility, that he was remorseful, and he was relying upon those issues to try to argue to the sentencing judge that he should receive a departure sentence, contrary to [the] confession that he made to the detectives in this case. And it's contrary to the statements that he made at his plea."

As a result, the district court found that Garcia-Gomez had failed to present a colorable claim of innocence.

In assessing this factor we are mindful of the new statutory definition of actual innocence: "As used herein, the term actual innocence requires the prisoner to show it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence." K.S.A. 2016 Supp. 60-1507(f)(2)(A). Of course, in his motion and appellate briefing, Garcia-Gomez does not assert new evidence to prove his innocence. While he questions the voluntariness of his confession, we are still left with the considerable evidence of his guilt as previously recited in detail in the Factual and Procedural Background section and his admissions of guilt at his plea hearing and sentencing. Under the totality of circumstances, we are convinced that Garcia-Gomez has not made a sufficient claim of actual innocence.

Applying the two-factor test set forth in K.S.A. 2016 Supp. 60-1507(f)(2)(A) and also considering the three-factor test enunciated in *Vontress*, we conclude the district court did not err in ruling that Garcia-Gomez failed to show that it was necessary to consider his K.S.A. 60-1507 motion to prevent a manifest injustice. Accordingly, the district court did not err in denying the motion at the preliminary hearing.

Affirmed.

12