NOT DESIGNATED FOR PUBLICATION

No. 114,261

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

NICHOLAS GENE FLORENTIN,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sumner District Court; WILLIAM R. MOTT, judge. Opinion filed November 23, 2016. Affirmed.

*Nancy Ogle*, of Ogle Law Office, L.L.C., of Wichita, for appellant.

*Kerwin L. Spencer*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., MCANANY and STANDRIDGE, JJ.

*Per Curiam*: Nicholas Gene Florentin appeals from the trial court's denial of his K.S.A. 60-1507 motion for a new sentencing hearing. Florentin argues that the trial court erred in finding that his trial counsel's performance did not amount to ineffective assistance of counsel. Florentin was originally convicted of one count of rape under K.S.A. 21-3502(a)(2) and sentenced to life imprisonment with a 25-year mandatory minimum sentence under K.S.A. 21-4643(a) (Jessica's Law). Florentin argues that his trial counsel was deficient when she did not raise a case-specific constitutional proportionality challenge to his sentence. Florentin argues that his sentence is cruel and/or unusual punishment under the Kansas and United States Constitutions. Florentin

1

further argues that he was prejudiced by his trial counsel's performance because a constitutional challenge would have likely been successful. Finding no merit in Florentin's arguments, we affirm.

The trial court took judicial notice of Florentin's earlier cases without objection from counsel. See *State v. Florentin*, 297 Kan. 594, 303 P.3d 263 (2013). Moreover, the trial court's findings of fact accurately summarized the events leading to this appeal:

"On June 24, 2009, Florentin was arrested on allegations he had sexual intercourse with a child under fourteen years of age (B.C.), twice. Both Jessica's Law offenses were alleged to have occurred on June 5, 2009, as set forth in the original criminal complaint in 09 CR 140. Florentin posted bond the day after his arrest, on June 25, 2009, in 09 CR 140. Elaine Esparza was appointed to represent Florentin.

"While on bond in 09 CR 140, Florentin was arrested in Sumner County case 09 CR 234 on allegations he broke into [a] residence located at . . . Argonia, Kansas, and forcibly raped the adult female occupant . . . . These crimes were alleged to have occurred on September 27, 2009, while on felony bond in the child rape case, 09 CR 140. Elaine Esparza was appointed to represent Florentin in that case as well. The same district judge handled both cases, and is handling this K.S.A. 60-1507 motion.

"On March 4, 2010, at the preliminary hearing on the 'adult rape' case (09 CR 234), Florentin was bound over for aggravated burglary and rape of C.W. A month and a half later, on April 20, 2010, a jury found Florentin guilty of raping a child (B.C.), as alleged in count 1 of 09 CR 140. Florentin was acquitted of count 2.

"Prior to sentencing in the child rape case (09 CR 140), defendant filed a 'Motion for Departure.' Among the stated reasons offered to the court for durational departure were: Florentin's age of 19; Florentin had only been convicted of misdemeanors 'at the time of his offense'; the child victim was a willing participant in the sexual intercourse with Florentin; the child wasn't harmed; Florentin only used his finger to commit the rape; and a sex offender evaluation placed Florentin in a '"low-moderate" risk for future sexual reoffending or a 6.6% risk of reoffending over the next five years.'

2

"The sentencing/motion for departure in the child rape case (09 CR 140) was held on June 7, 2010. At the sentencing/motion for departure, there was no mention of the fact the trial court, after an evidentiary hearing, had already found there was probable cause to believe the defendant committed the crimes of aggravated burglary and forcible rape of an adult woman in 09 CR 234. Dr. Nystrom's sex offender evaluation of Florentin placed him in the low-moderate risk category for reoffending, meaning a 6.6% chance of reoffending over the next five years. Dr. Nystrom's evaluation did not mention, nor account for in any way, the allegations or probable cause determination of forcible rape of an adult woman in calculating the percentage chance of reoffending within five years. Nystrom's evaluation was entered into evidence at the motion to depart upon motion by the defense, without any foundational or hearsay objection from the State, and no cross examination by the State. The trial court denied the motion for departure, stating that Florentin's proposed reasons for departure, taken separate or together, failed to establish any substantial and compelling reason to depart durationally from the life sentence to a 78 month sentence. The court noted in its oral ruling form the bench trial that it felt the 6.6% chance of reoffending within the next five years actually hurt more than it helped.

"Florentin's attorney, Elaine Esparza, did not challenge the constitutionality of Florentin's hard 25 life sentence, as violating the case-specific proportionality requirements of either the Kansas or United States Constitutions.

"On June 9, 2010, Florentin appealed his conviction and sentence in the child rape case, 09 CR 140. About three months after being sentenced for the rape of a child in 09 CR 140, defendant [pled] no contest in 09 CR 234 to the reduced charge of attempted forcible rape of an adult [woman] . . . . For purposes of that sentencing, Florentin was classified as a 'persistent sex offender' under Kansas law. Florentin was sentenced to 59 months in prison for the adult rape case on September 30, 2010. The sentence for attempting to forcible rape the adult woman in 09 CR 234 was ordered to run consecutive to his conviction for raping a child.

"On appeal, Florentin's conviction for the rape of a child was affirmed unanimously by the Kansas Supreme Court. *State v. Florentin*, 297 Kan. 594, 606 (2013). The Kansas Supreme Court affirmed the hard 25 life sentence as well, but only by the narrowest of margins. Three of the seven justices dissented from this portion of the

3

majority opinion, stating the trial court abused its discretion in denying Florentin's departure motion at sentencing, calling the facts 'tailor-made' for a downward durational departure, while speculating that the trial court 'misunderstood the parameters' of its discretion to depart. *State v. Florentin*, 297 Kan. at 606-607."

Our Supreme Court also rejected Florentin's argument on appeal that his sentence amounted to cruel and/or unusual punishment in violation of the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights. Our Supreme Court stated that Florentin had abandoned those arguments by not bringing them to the trial court. 297 Kan. At 604-06.

Florentin filed this K.S.A. 60-1507 motion on May 23, 2014. The motion was based on the assertion that he was denied effective assistance of counsel when his trial counsel failed to raise a constitutional case-specific proportionality challenge to his sentence, thus resulting in prejudice to the outcome of his case. After a full evidentiary hearing, Florentin's K.S.A. 60-1507 motion was denied on Febraury 27, 2015.

*Did the Trial Court Err in Denying Florentin's K.S.A. 60-1507 Motion for a New Sentencing Hearing Based on a Claim of Ineffective Assistance of Counsel?*

When faced with a K.S.A. 60-1507 motion, a trial court has three available options:

> "'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motions, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citation omitted.]" *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

4

After a full evidentiary hearing, as was held in Florentin's case, the trial court must issue findings of fact and conclusions of law regarding the issues presented. Supreme Court Rule 183(j) (2015 Kan. Ct. R. Annot. 271). This court reviews those findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the trial court's conclusions of law. This court reviews the trial court's ultimate conclusions of law using a de novo standard. *State v. Adams*, 297 Kan. 665, 669, 304 P.3d 311 (2013).

In his K.S.A. 60-1507 motion, Florentin argues that he received ineffective assistance of counsel at his trial. Effective assistance of counsel is a right guaranteed by the Sixth Amendment to the United States Constitution. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984). An ineffective assistance of counsel claim contains mixed questions of fact and law. After the trial court conducts a full evidentiary hearing, this court determines whether the trial court's findings are supported by substantial competent evidence and whether the findings support the trial court's legal conclusions. This court applies a de novo standard to the trial court's conclusions of law. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015). Substantial evidence means legal and relevant evidence that could be accepted by a reasonable person as adequate to support a conclusion. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015).

To successfully argue an ineffective assistance of counsel claim, a defendant must establish (1) that defense counsel's performance was deficient under the totality of the circumstances, and (2) he was prejudiced; *i.e.*, there is a reasonable probability that a different result would have been reached had the deficient performance not occurred. *Sola-Morales v. State*, 300 Kan. at 882 (relying on *Strickland*, 466 U.S. at 687).

*Was Florentin's Trial Counsel Deficient Under the Totality of the Circumstances?*

Trial counsel's performance is afforded great deference in a claim of ineffective assistance of counsel and requires consideration of all the evidence presented. This court must strongly presume that trial counsel's conduct amounted to reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014).

Florentin argues that his trial counsel was deficient when she failed to raise a case-specific proportionality challenge to his 25-year life sentence. Specifically, Florentin argues that his trial counsel should have made the argument that his sentence violated the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution. Florentin asserts that in failing to do so, his trial counsel's performance fell below an objective standard of reasonableness or was otherwise deficient.

On the other hand, the State asserts that Florentin's trial counsel "employed a strategy that avoided mentioning that [Florentin] had been arrested while on bond for the present case for a separate charge of forcible rape of an adult victim."

At the evidentiary hearing on Florentin's K.S.A. 60-1507 motion, the following exchange occurred between Florentin's original trial counsel and Florentin's counsel for the K.S.A. 60-1507 motion:

"Q. . . . [D]id you consider whether or not challenging the constitutionality of the, what we call the Jessica statute, with respect to it being cruel and unusual punishment?

"A. I recall that I did quite a bit of research on the sentencing and my statement that [I] submitted to BIDS for payment shows at least three entries where I researched. To the best of my memory, I didn't have any basis. I was looking—certainly looking at the issue regarding that Jessica sentence, whether or not anybody had been successful at challenging that. And I'm thinking, at the time, my research showed that the courts had

6

found that it was Constitutional. So, short answer is – I think I investigated and didn't do it."

The trial judge then asked Florentin's K.S.A. 60-1507 counsel several questions:

"THE COURT: Have you ever . . . seen a successful attack on the constitutionality of a sentence based on the excessive punishment?
"MR. BROWN: I've never conducted one.
"THE COURT: Have you ever seen one be successful?
"MR. BROWN: Not in my presence. No, Sir.
"THE COURT: Have you ever seen successful motions for departure?
"MR. BROWN: Oh, yes. I've – in fact, I've had success on Motion for Departures.
"THE COURT: So, constitutional attacks are exceedingly . . .
"MR. BROWN: They are extremely difficult in all candor.
"THE COURT: I think the case law from the Supreme Court of the United States says it is exceedingly rare.
"MR. BROWN: Yes.
"THE COURT: Whereas, departures are not.
"MR. BROWN: No. In fact, I've had departures sustained in Jessica cases."

In denying Florentin's K.S.A. 60-1507 motion, the trial court made the following findings:

"As a practical matter, it is difficult to find fault with Ms. Esparza's performance because, despite having attempted to forcibly rape a woman while on bond in the child rape case, Florentin was one justice short of benefiting from a ruling by the Kansas Supreme Court that the trial court abused its discretion by not granting Florentin's downward durational departure motion in the child rape case. If Ms. Esparza had launched a constitutional attack, the trial court would have continued the sentencing for child rape until Florentin's adult rape case was resolved . . . . Accordingly, the criminal history worksheet in the child rape case would have likely reflected convictions from the adult rape matter, as would be the case now if this court were to entertain a resentencing on the child rape case. See *State v. Patry*, 266 Kan. 108, 111 (1998) (Criminal

7

convictions occurring in a separate case subsequent to the initial sentencing are to be utilized in determining criminal history when a resentencing results.). . . .

". . . Under the circumstances, Florentin got as close to a favorable outcome as one could reasonably hope for the way things were handled by Ms. Esparza. Florentin's best shot at a more lenient sentence was to quietly work within the framework of the departure statutes . . . not boldly attack the sentence as unconstitutional. . . ."

The trial court's findings were supported by substantial competent evidence. Florentin had taken his case on direct appeal to the Kansas Supreme Court. See *Florentin*, 297 Kan. at 594. Our Supreme Court narrowly, by a vote of 4-3, upheld the trial court's denial of Florentin's motion for a downward departure. *Florentin*, 297 Kan. at 602-03, 606-09. Florentin argues that "the three [dissenting] justices' conclusion was not a comment on trial counsel's performance, but it is an indication of their belief that Florentin did not deserve to be sentenced to the hard 25-year life sentence he received."

Florentin's assertion misses the mark. The fact that the dissenting justices believed that the trial court abused its discretion by failing to properly apply the departure mechanism most definitely speaks to trial counsel's performance. Not only does it speak to trial counsel's performance, it also tends to show that trial counsel employed a solid strategy in using the motion for a downward durational departure in lieu of a constitutional attack.

Florentin also asserts that when his trial occurred it was routine practice for counsel representing Jessica's Law offenders to challenge the constitutionality of their client's sentences. Nevertheless, if counsel makes a strategic decision after a thorough investigation of the law and the facts relevant to the realistically available options, his or her decision is virtually unchallengeable. Strategic decisions made after a less than comprehensive investigation are reasonable exactly to the extent a reasonable professional judgment supports the limitations on the investigation. *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013) (quoting *Strickland*, 466 U.S. at 690-91). Just

8

because something is routine practice does not make it mandatory practice. Florentin's trial counsel was allowed to make strategic decisions about how to move forward after she completed an investigation of the law and facts.

Here, Florentin's trial counsel testified at the original K.S.A. 60-1507 evidentiary hearing that she had researched the availability of a constitutional challenge and its likelihood of success. Further, even Florentin's counsel for the K.S.A. 60-1507 motion admitted that he had seen much more success in using motions for downward durational departures than case-specific constitutional attacks. There is nothing in the record on appeal that would indicate that Florentin's trial counsel did not perform a thorough investigation of the law and facts as they related to Florentin's options at trial. Instead, the facts tend to show that Florentin's trial counsel made a reasonable strategic decision in choosing to make a motion for downward durational departure instead of raising a constitutional attack.

Leading to this conclusion is a point that Florentin himself makes in his brief. Florentin asserts that because the facts and circumstances that trial counsel relied on in the motion for downward durational departure are the same facts and circumstances that would have supported a case-specific constitutional challenge, trial counsel was not justified in failing to raise that argument. Florentin's assertion shows that his trial counsel was making a calculated strategic decision in choosing to attack his sentence by way of the motion for downward durational departure.

Moreover, in its findings of fact and conclusions of law, the trial court noted that had Florentin raised a question of his sentence's constitutionality, the trial court would have continued his sentencing. Had the trial court continued sentencing on Florentin's child rape case, it would have then considered Florentin's pending adult rape case in addressing the constitutionality of his sentence. See *State v. Hannah*, 248 Kan. 141, 145, 804 P.2d 990 (1991) (trial court is not limited to considering events occurring only before

9

the individual crime for which defendant is being sentenced). This means that the trial court would have had the authority to consider Florentin's pending adult rape charge in determining whether his sentence for the child rape was constitutional. This would have made Florentin's constitutional challenge to his sentence a weaker claim. Again, this fact reinforces the reasonableness of Florentin's trial counsel's actions.

Thus, Florentin fails to show that his trial counsel's performance was deficient based on the totality of the circumstances. This is especially true where this court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *Kelly*, 298 Kan. at 970. Even more so, this is true where his trial counsel made a strategic decision after thoroughly investigating the applicable law and relevant facts. See *Cheatham*, 296 Kan. at 437. For these reasons, Florentin has failed to satisfy the first part of the ineffective assistance of counsel test where he has failed to show that his trial counsel's performance was deficient. Nevertheless, for the sake of argument, even assuming arguendo that Florentin's trial counsel's performance was deficient, Florentin has failed to show that he was prejudiced by trial counsel decision not to raise the constitutional challenge.

*Was Florentin Prejudiced by His Trial Counsel's Decision Not to Raise the Constitutional Challenge?*

To establish that he was prejudiced by his trial counsel's performance, Florentin must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability meaning a probability sufficient to undermine confidence in the outcome. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

To determine whether the outcome of Florentin's sentencing would have been different but for trial counsel's actions, we must examine Florentin's likelihood of success on the arguments he would have had his trial counsel make.

Florentin argues that had his trial counsel made a case-specific proportionality challenge to his sentence based on the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights, "it is reasonably probable that the [Supreme] Court would have ruled in his favor on that issue."

For a challenge based on § 9 of the Kansas Constitution Bill of Rights, we must look to the three-pronged test established in *State v. Freeman*, 223 Kan. 362, 574 P.2d 950 (1978). The following factors are to be considered:

> "(1) The nature of the offense and the character of the offender . . . with particular regard to the degree of danger present to society . . . ;
> "(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses . . . ; and
> "(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." *Freeman*, 223 Kan. at 367.

No single factor is outcome determinative. *State v. Seward*, 296 Kan. 979, 982, 297 P.3d 272 (2013). Still, one factor may be so strong that it necessarily directs the final conclusion. *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 (2008). Even so, the court should still consider each factor of the test. *Ortega-Cadelan*, 287 Kan. at 161. Where arguments are made about the proportionality of the punishment as it relates to the crime, the facts surrounding the argument are a necessary part of the overall analysis. *Ortega-Cadelan*, 287 Kan. at 161.

For a challenge based on the Eighth Amendment to the United States Constitution, a court must first compare the gravity of the offense and the severity of the sentence.

11

*State v. Gomez*, 290 Kan. 858, Syl. ¶ 5, 235 P.3d 1203 (2010). The analysis can include considering the offender's state of mind and motive in committing the crime, the harm that resulted to the victim or to society, the offender's criminal history, and the offender's propensity for violence. *Gomez*, 290 Kan. 858, Syl. ¶ 5. It is rare that this threshold comparison will result in a finding of gross disproportionality. *Gomez*, 290 Kan. 858, Syl. ¶ 5. If a finding of gross disproportionality is made, this court should then compare the offender's sentence with the sentences of other offenders in the same jurisdiction and with the sentences of other offenders for the same crime in other jurisdictions. *Gomez*, 290 Kan. 858, Syl. ¶ 5.

Based on the descriptions, the analysis for the § 9 challenge and the analysis for the Eighth Amendment challenge are very similar. Our Supreme Court has stated that the "analysis under the *Freeman* factors for the Kansas constitutional challenge applies with equal force to the first of the classifications for an Eighth Amendment challenge." *State v. Ross*, 295 Kan. 424, 429, 284 P.3d 309 (2012). Thus, the likelihood of success of both challenges will be discussed under the framework of *Freeman*.

*The Nature of the Offense and the Character of the Offender, With Particular Regard to the Degree of Danger Present to Society*

In evaluating the first *Freeman* factor, courts are encouraged to consider the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment. *Freeman*, 223 Kan. at 367.

Florentin argues that the relevant facts to be considered are his age when the crime occurred, the child's willingness to participate in the crime, the absence of injury to the child, and the lack of violence. Florentin argues that this prong weighs so heavily in his favor that this court should reverse the trial court based on this prong alone. The facts that

Florentin argues initially seem to weigh in his favor. Florentin was 19 years old when the crime happened and the child was 13 years old. The child was a willing participant in the sexual act that amounted to the crime. The child even testified that she considered Florentin to be her boyfriend.

Even so, the trial court found a fatal flaw in Florentin's argument as it relates to the first prong. With particular regard to the degree of danger present to society, the trial court stated:

> "The final fact to consider regarding the character of the offender devastates Florentin's case. Florentin has been found guilty of attempting to forcibly rape an adult woman. The attempted rape of that adult woman occurred while Florentin was on bond and facing life in prison for the rape of a thirteen year old girl. The fact that Florentin has been convicted of attempting to forcibly rape an adult woman is not part of Dr. Nystrom's calculus—so logically, the threat posed by Florentin is significantly greater than estimated by Dr. Nystrom. By his violent sexual conduct committed close in time following his rape of a thirteen year old girl, Florentin has tangibly, profoundly, and tragically demonstrated the high degree of danger Florentin presents to society.
>
> . . . .
>
> ". . . It is the particular offender's propensity for violence as evidenced by Dr. Nystrom's report, and more convincingly by the fact that Florentin attempted to forcibly rape a woman while on bond in his child rape case, that prevents any credible argument that this is one of those 'rare' cases that leads to an inference of gross disproportionality."

Our Supreme Court has stated that the legislative intent behind Jessica's Law is to protect children by making sure that offenders who commit sexual crimes against children are removed from society. See *State v. Spencer*, 291 Kan. 796, 823-24, 248 P.3d 256 (2011). The United States Supreme Court has stated that there are "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class." *Smith v. Doe*, 538 U.S. 84, 103, 123 S. Ct. 1140, 155 L. Ed. 2d 164, *reh. denied* 538 U.S. 1009 (2003).

13

Florentin argues that Dr. Nystrom's finding that he only had a 6.6 percent chance of reoffending over the next 5 years shows that he does not pose the type of danger generally associated with sex offenders. As the trial court noted, Florentin's argument fails to account for the fact that he pled no contest to the charge of attempted forcible rape of an adult.

Florentin cannot escape the fact that while he was out on bond in his underlying criminal case for the rape of a child, he was arrested for the forcible rape of an adult victim. This is a fact that even Florentin acknowledges. As the trial court noted, in assessing Florentin's character, this fact may prove fatal to his argument. The penological purpose of Jessica's Law is to keep children safe by way of incarcerating sexual offenders who perpetrate crimes on the youth of Kansas. *State v. Woodward*, 294 Kan. 717, 722, 280 P.3d 203 (2012).

For these reasons, and with particular regard to the degree of danger present to society, the first prong of the *Freeman* test for constitutionality under § 9 of the Kansas Constitution Bill of Rights weighs strongly against Florentin. In evaluating his character, his propensity for sexual violence is apparent. Florentin's propensity is evidenced by his arrest for the forcible rape of an adult while out on bond in the child rape case. Even though the facts surrounding the child rape case seem favorable to Florentin, his dangerous character outweighs those facts.

This conclusion also works against Florentin's challenge based on the Eighth Amendment to the United States Constitution. Thus, it is unlikely that a court would find that Florentin's sentence was grossly disproportionate.

14

*A Comparison of the Punishment With Punishments Imposed in This Jurisdiction for More Serious Offenses*

The second *Freeman* factor requires the court to look to punishments for more serious crimes perpetrated and sentenced in the same jurisdiction. *Freeman*, 223 Kan. at 367. If there are more serious crimes that are punished less severely, then the challenged sentence is more suspect. *Freeman*, 223 Kan. at 367. This type of information is also relevant to the second half of the Eighth Amendment analysis.

Here, Florentin argues that there are less severe punishments in Kansas for crimes that are more severe than the one he committed. Specifically, Florentin argues that he would have received a less severe punishment had he been convicted of second-degree intentional murder under K.S.A. 2015 Supp. 21-5403(a)(1) (formerly K.S.A. 21-3402). Florentin asserts that had he been convicted of second-degree murder he would have received a sentence ranging from 147-165 months instead of the 300 month sentence that he received under Jessica's Law.

Florentin advances an argument that has been used with little success. Specifically, *Woodard* addressed the argument in depth. The defendant in *Woodard* was sentenced to three life sentences with a mandatory minimum of 25 years under Jessica's Law. *Woodard*, 294 Kan. at 719. The defendant in *Woodard* argued that his crime was less serious than homicide but punished more severely. *Woodard*, 294 Kan. at 723. The *Woodard* court stated:

> "The fact that the penalty for certain categories of homicide may be less severe than the penalties for other, nonhomicide crimes does not automatically render the penalties for the nonhomicide crimes unconstitutional. There is no strict linear order of criminal activity that ranks all homicides as the most serious crimes and all nonhomicide crimes as less serious, with the corresponding penalties necessarily ranking in diminishing durations of imprisonment." *Woodard*, 294 Kan. at 723.

15

The *Woodard* court went on to find that the punishment under Jessica's Law was not disproportionately harsh under § 9 of the Kansas Constitution Bill of Rights. *Woodard*, 294 Kan. at 724.

Here, Florentin attempts to distinguish himself from the defendant in *Woodard* by arguing that he is less dangerous. In making this argument, Florentin relies on his argument made under the first *Freeman* factor. For the reasons noted under the analysis of the first *Freeman* factor, this is not a persuasive argument.

Thus, Florentin's argument that he would be less severely sentenced had he been charged with second-degree intentional murder does not prove that his sentence was disproportionate under § 9 of the Kansas Constitution Bill of Rights or the Eighth Amendment to the United States Constitution. For these reasons, the second *Freeman* factor does not weigh in Florentin's favor.

*A Comparison of the Penalty With Punishments in Other Jurisdictions for the Same Offense*

This *Freeman* factor is straight forward and applies to both the analysis of Florentin's challenge based on § 9 of the Kansas Constitution Bill of Rights and his challenge based on the Eighth Amendment to the United States Constitution.

Florentin argues that because many jurisdictions impose less stringent mandatory maximum sentences, the third *Freeman* factor weighs in his favor. Florentin asserts that many jurisdictions have mandatory maximum sentences ranging from 7 to 40 years for the crimes that involve a victim under 14 years old and an offender under 21 years old.

Neither the State nor the trial court addressed the third prong. Thus, for purposes of Florentin's argument, this court will accept Florentin's assertion that Kansas' penalties

16

are some of the harshest in the nation. See *State v. Newcomb*, 296 Kan. 1012, 1020-21, 298 P.3d 285 (2013) (State's casual approach to briefing the third prong of *Freeman* compels court to accept defendant's assertions as true); accord *State v. Swint*, 302 Kan. 326, 345-46, 352 P.3d 1014 (2015) (where defendant's argument regarding the third prong of *Freeman* is unchallenged by the State, that factor weighs in defendant's favor).

Even though the State failed to brief the third *Freeman* factor, this court will not ignore the fact that our Supreme Court has spoken on this factor before. Our Supreme Court held in *Seward*, 296 Kan. at 280, that Kansas does not have the harshest penalties for the crime of rape committed by an adult against a child younger than 14 years of age.

Although the third *Freeman* factor weighs in Florentin's favor in regard to his challenges based on § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution, that factor does not weigh heavily in his favor in light of *Seward*.

As pointed out earlier, all three factors should be balanced against one another in determining the strength of Florentin's argument. See *Ortega-Cadelan*, 287 Kan. at 161. It is true that one factor may weigh so heavily as to command the outcome of the *Freeman* test. *Ortega-Cadelan*, 287 Kan. at 161.

Here, the third *Freeman* factor, though weighing in Florentin's favor, does not weigh so heavily in his favor that his sentence shocks the conscience or offends fundamental notions of human dignity. See *Swint*, 302 Kan. at 346 (defendant's hard 25 life sentence not disproportionate when weighed against nature of crime, defendant's character, and proportionality of sentence with other Kansas crimes); *State v. Spear*, 297 Kan. 780, 803, 304 P.3d 1246 (2013) (holding that even though the third *Freeman* factor weighs in defendant's favor, no one factor is controlling, so that conclusion does not direct the final conclusion).

By balancing the three *Freeman* factors against one another, it becomes clear that Florentin's sentence was not disproportionate under § 9 of the Kansas Constitution Bill of Rights or the Eighth Amendment to the United States Constitution. This is especially true where Florentin's character is considered under the first factor. In evaluating Florentin's character, it cannot be ignored that while he was out on bond for the underlying child rape charge, he was arrested for the forcible rape of an adult. If there is any one factor in Florentin's case that is weighed more heavily than the others, it is the first factor which weighs heavily against him.

Thus, Florentin has failed to show a reasonable probability that his sentencing would have been different had his trial counsel raised a case-specific proportionality challenge based on § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution. In failing to do so, Florentin has failed to establish that he was prejudiced by his trial counsel's actions.

Moreover, even if Florentin was successful in his constitutional challenge to his sentence, he would have to be resentenced. The sentencing court would then have to determine Florentin's criminal history. Florentin, the trial court, and the State all agree that the sentencing court would consider Florentin's conviction for the attempted forcible rape of an adult that occurred after he was charged in the child rape case. All three are correct in this assessment.

*State v. Patry*, 266 Kan. 108, 967 P.2d 737 (1998), applies in determining whether Florentin's subsequent conviction would be considered in his resentencing. In *Patry*, the defendant was convicted on drug charges in 1995. While his conviction for drug charges was on appeal, the defendant pled guilty to separate conspiracy charges in 1997. The defendant appealed his drug conviction and was awarded resentencing. When he was resentenced, his criminal history score was higher than before because the sentencing court considered his 1997 conviction in determining his criminal history score. Our

18

Supreme Court held that "the trial court properly used additional information showing further violations which existed at the time of the resentencing hearing." *Patry*, 266 Kan. at 113.

Thus, under *Patry*, it would be proper for the resentencing court to consider Florentin's subsequent conviction for attempted forcible rape of an adult when resentencing him. So, even if his case-specific constitutional challenges were successful as to his original sentence, his resentencing would not necessarily result in a lesser sentence.

In conclusion, Florentin has failed to carry the burden of a claim of ineffective assistance of counsel. Florentin's trial counsel was not deficient where she made a strategic decision to challenge his sentence by way of a motion for downward durational departure instead of constitutional challenges. Florentin's trial counsel's actions allowed her to keep the trial court from considering the fact that Florentin was arrested for the forcible rape of an adult, and later convicted of the attempted forcible rape of an adult, while he was out on bond in the instant case. Further, after a consideration of the three-prong *Freeman* test, Florentin has failed to show that he was prejudiced by his trial counsel's failure to raise a case-specific constitutional challenge to his sentence. The *Freeman* analysis showed that such a challenge to Florentin's sentence would not likely have been successful. As a result, the trial court properly denied Florentin's K.S.A. 60-1507 motion based on ineffective assistance of counsel.

Affirmed.