NOT DESIGNATED FOR PUBLICATION

No. 121,510

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LUIS A. CABRERA-SANCHEZ,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; JENNIFER ORTH MYERS, judge. Opinion filed June 26, 2020. Affirmed.

*Razmi M. Tahirkheli*, of Tahirkheli & Premer-Chavez Law Office, L.L.C., of Kansas City, for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., GARDNER, J., and WALKER, S.J.

PER CURIAM: Following a direct appeal of his convictions for aggravated indecent liberties with a child and rape, Luis A. Cabrera-Sanchez filed a K.S.A. 60-1507 motion alleging that his sentence was cruel and unusual punishment and that he was provided ineffective assistance of trial and appellate counsel. The district court dismissed his motion, and Cabrera-Sanchez appeals. Upon review, we find that Cabrera-Sanchez' sentence is not cruel and unusual punishment and that he abandoned any ineffective

1

assistance of counsel claim. Accordingly, we affirm the district court's dismissal of Cabrera-Sanchez' K.S.A. 60-1507 motion.

FACTUAL AND PROCEDURAL BACKGROUND

In 2014, a jury found Cabrera-Sanchez guilty of aggravated indecent liberties with a child and rape of a child under 14 years of age. Because Cabrera-Sanchez was over 18 years old when he committed the child-sex offenses, his crimes were off-grid person felonies and carried presumptive life sentences without the possibility of parole for 25 years (hard 25 life sentences) under what is known as Jessica's Law. K.S.A. 2012 Supp. 21-5506(c)(3); K.S.A. 2012 Supp. 21-5503(b)(2); K.S.A. 2012 Supp. 21-6627(a)(1).

Our court detailed the facts underlying Cabrera-Sanchez' crimes in his direct appeal, which resulted in his convictions being affirmed. *State v. Cabrera-Sanchez,* No. 112,588, 2016 WL 197805, at *1-2 (Kan. App. 2016) (unpublished opinion). It serves no purpose to reiterate those graphic details here, so we merely summarize the evidence and proceedings in the case.

In March 2013, A.R., the mother of eight-year-old J.S. and seven-year-old I.S., was alerted by her daughters that they were being sexually abused by Cabrera-Sanchez, A.R.'s live-in boyfriend. A.R. reported this information to police, who arranged for the two young girls to be interviewed separately by trained social workers at Sunflower House, a children's advocacy center in Kansas City.

During the videotaped interviews, both J.S. and I.S. reported that Cabrera-Sanchez had engaged in several instances of inappropriate behavior and sexual touching with them. When subsequently confronted by police, Cabrera-Sanchez denied the allegations, but he indicated he might have inadvertently touched the girls while tickling them or wrestling with them.

2

The State ultimately charged Cabrera-Sanchez with a single count of rape of I.S. and one count of indecent liberties with J.S., both off-grid felonies under Jessica's Law. The district court later allowed the State to admit evidence of other incidents of improper sexual touching of the girls, which the State chose not to charge, under the provisions of K.S.A. 2014 Supp. 60-455(d).

During a three-day jury trial, the State presented the testimony of A.R., both young girls, the forensic interviewers, investigating officers, and others. The jury also viewed the girls' videotaped interviews and anatomical drawings. Cabrera-Sanchez testified in his own behalf and denied any improper sexual conduct with the girls. He also called Dr. Robert Barnett, a licensed clinical psychologist. Barnett's testimony questioned whether the way the girls were interviewed may have prompted the girls to make false accusations of sexual misconduct. Because evidence of more than one instance of sexual misconduct against the girls by Cabrera-Sanchez was admitted under the State's K.S.A. 60-455 motion, the district court instructed the jury as to the specific incident of rape the charge represented.

The jury found Cabrera-Sanchez guilty of both charges.

After the jury found Cabrera-Sanchez guilty, his trial attorney—Patrick E. D'Arcy—moved for a new trial, based in part on the admission of K.S.A. 60-455 evidence which suggested that Cabrera-Sanchez committed an uncharged rape of I.S. in a bathtub. In this motion, the defense reasserted its pretrial and contemporaneous objections to the admissibility of the State's 60-455 evidence. Following a hearing, the district court denied the motion for a new trial.

Before sentencing, the defense filed a motion objecting to the imposition of presumptive hard 25 life sentences. Cabrera-Sanchez argued that imposing the presumptive sentences would amount to cruel and unusual punishment in violation of the

3

United States Constitution. The district court denied the motion and sentenced Cabrera-Sanchez to two concurrent hard 25 life sentences.

Cabrera-Sanchez directly appealed his convictions arguing that (1) the district court erred by admitting the State's 60-455 evidence, (2) the district court erred when giving a limiting instruction on the State's 60-455 evidence, and (3) the State committed prosecutorial error during closing argument by shifting the burden of proof and commenting on facts not in evidence. However, a panel of our court affirmed Cabrera-Sanchez' convictions. *Cabrera-Sanchez*, 2016 WL 197805, at \*1-10.

Because the case rested on a credibility determination, the panel first determined that no prejudicial error stemmed from the admission of K.S.A. 60-455 evidence. 2016 WL 197805, at \*4-5. Turning to the limiting instruction, which permitted the jurors to consider the State's 60-455(d) evidence for any relevant purpose, the *Cabrera-Sanchez* court noted that any error in giving the instruction was invited error. 2016 WL 197805, at \*5-6. But even assuming there was no invited error, our court found no material error in giving the instruction because Cabrera-Sanchez was entitled to no limiting instruction regarding the other bad acts evidence in a prosecution for the sex offenses. 2016 WL 197805, at \*6. Finally, the court held that the State committed no prosecutorial error during closing argument. 2016 WL 197805, at \*10.

On April 17, 2018, Cabrera-Sanchez filed a K.S.A. 60-1507 motion alleging numerous claims of ineffective assistance of trial and appellate counsel. Cabrera-Sanchez' original motion alleged:

1.   Trial counsel was ineffective because he failed to negotiate a plea agreement.
2.   Trial counsel was ineffective because he failed to file a motion to redact video evidence.

4

3.    Trial counsel was ineffective because he failed to argue that the State's K.S.A. 60-455 evidence was inadmissible on the basis that it boosted the credibility of the State's witnesses.

4.    Trial counsel was ineffective because he failed to properly cross-examine and impeach the "complaining witness" and expert witness.

5.    Trial counsel was ineffective because he failed "in giving [the K.S.A.] 60-455 limiting instruction."

6.    Trial counsel was ineffective because he failed to "investigate [the] lack of medical evidence."

7.    Trial counsel was ineffective because he failed to properly research and argue the motion for a new trial based on the inadmissibility of the State's K.S.A. 60-455 evidence.

8.    Appellate counsel was ineffective because he failed "to effectively argue [the] issue of [how the State's] 60-455(d) evidence skewed the jurors' credibility determination."

9.    Appellate counsel was ineffective because he failed to raise the issue of prosecutorial misconduct during closing argument.

10.    Appellate counsel was ineffective because he failed to raise the issue of cumulative error.

The district court appointed counsel to represent Cabrera-Sanchez on his motion. His counsel filed an amended K.S.A. 60-1507 motion, incorporating the 10 previous arguments and adding two additional allegations:

11.    Cabrera-Sanchez' hard 25 life sentence was grossly disproportionate and violated the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights.

12.    Trial counsel and appellate counsel were ineffective because they failed to argue that Cabrera-Sanchez' sentence was unconstitutional.

5

The district court held an evidentiary hearing on the K.S.A. 60-1507 motion. Both Cabrera-Sanchez and D'Arcy testified at the hearing. Addressing his first issue, Cabrera-Sanchez testified that he had asked D'Arcy to obtain a plea offer from the State, but D'Arcy failed to do so. Cabrera-Sanchez explained that he would have accepted a plea offer for a 96-month sentence. However, Cabrera-Sanchez admitted that he told D'Arcy that he was innocent.

Addressing his second issue, Cabrera-Sanchez said that he wanted part of the recorded interviews at the Sunflower House redacted. Cabrera-Sanchez explained that portions should have been redacted because when the interviewers asked questions without mentioning his name, the victims did not give a quick answer. But when the interviewers asked the same questions using Cabrera-Sanchez' name, then the victims answered right away. Cabrera-Sanchez admitted that he never told D'Arcy about his concerns with the video.

On his third issue, Cabrera-Sanchez recalled that D'Arcy filed a motion to exclude the State's K.S.A. 60-455 evidence. However, Cabrera-Sanchez explained that his issue was not that D'Arcy failed to argue against the K.S.A. 60-455 evidence, but that D'Arcy did not explain it to him.

Regarding his fourth issue, Cabrera-Sanchez testified that D'Arcy should have prevented A.R. from testifying because she was sexually abused when she was a minor. Cabrera-Sanchez had no other concerns with D'Arcy's cross-examination and impeachment performance at trial.

Addressing his fifth issue, Cabrera-Sanchez testified that he believed D'Arcy failed to request a K.S.A. 60-455 limiting instruction.

For his sixth issue, Cabrera-Sanchez testified that D'Arcy did not investigate the "lack of medical evidence" enough. Cabrera-Sanchez believed that D'Arcy should have called more witnesses and found more experts, such as a medical doctor who could have prepared D'Arcy better.

On his seventh issue, Cabrera-Sanchez admitted that he did not tell D'Arcy to research any particular issue to raise in his motion for new trial. But Cabrera-Sanchez explained that D'Arcy should have argued that the district court did not properly instruct the jury on the definition of rape. Cabrera-Sanchez believed the jury was improperly instructed because during deliberations it wanted information about what is considered rape.

Addressing his eighth issue, Cabrera-Sanchez did not believe his appellate attorney missed anything in particular when arguing about the admissibility of the K.S.A. 60-455 evidence. Cabrera-Sanchez thought his appellate counsel should have investigated more but admitted that he did not know what further investigation would have yielded.

For his ninth issue, Cabrera-Sanchez believed the prosecutor committed misconduct by trying to trick the jury and telling the jury that it had to find him guilty.

Finally, Cabrera-Sanchez commented that he did not receive a fair sentence and his sentence violated the Eighth Amendment.

D'Arcy testified that no plea negotiations took place in Cabrera-Sanchez' case. D'Arcy discussed the possibility of a plea agreement with Cabrera-Sanchez, but Cabrera-Sanchez said he did not want to plead to something he never did. D'Arcy also explained the concept of no-contest pleas to Cabrera-Sanchez, but Cabrera-Sanchez refused that option as well. Throughout D'Arcy's representation, Cabrera-Sanchez maintained his

innocence and did not want to reach a plea agreement. D'Arcy said that if Cabrera-Sanchez requested a plea offer, he "would have run right to the DA's office."

After the evidentiary hearing, the district court issued a written order dismissing Cabrera-Sanchez' K.S.A. 60-1507 motion. Finding that Cabrera-Sanchez was not interested in reaching a plea agreement, the district court ruled that he failed to show D'Arcy's representation was deficient by not negotiating a plea agreement. The district court also determined that Cabrera-Sanchez' sentence was not cruel and unusual punishment and, therefore, he failed to establish prejudice from his counsels' failure to raise such a challenge. Concluding that the remaining issues lacked merit, the district court dismissed Cabrera-Sanchez' K.S.A. 60-1507 motion.

Cabrera-Sanchez has timely appealed from the district court's dismissal of his motion.

ANALYSIS

*Cruel and unusual punishment*

On appeal, Cabrera-Sanchez first contends that his concurrent hard 25 life sentences are cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights. Cabrera-Sanchez raises a case-specific challenge, arguing that his sentences are grossly disproportionate to his crimes of conviction.

When considering a case-specific disproportionality challenge to a defendant's sentence under the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights, we review the district court's findings of fact and conclusions of law under a bifurcated standard. *State v. Seward*, 296 Kan. 979, 981, 297

8

P.3d 272 (2013). Without reweighing the evidence, we first review the district court's factual findings under the substantial competent evidence standard. And we exercise unlimited review over the district court's legal conclusions drawn from those facts. 296 Kan. at 981.

We will first review Cabrera-Sanchez' challenge under the Kansas Constitution Bill of Rights and then consider his federal constitutional challenge.

*Section 9 of the Kansas Constitution Bill of Rights*

Section 9 of the Kansas Constitution Bill of Rights prohibits the infliction of cruel or unusual punishment. "Under § 9 of the Kansas Constitution Bill of Rights, a punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." *State v. Gomez*, 290 Kan. 858, Syl. ¶ 9, 235 P.3d 1203 (2010).

Our Supreme Court has set out a three-part test, first outlined in *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978), that controls the analysis of whether a sentence violates § 9 because of its length. *Seward*, 296 Kan. at 981. The three-part *Freeman* test weighs the following factors:

> "(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;
> "(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes

punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." *Freeman*, 223 Kan. at 367.

No single factor under the *Freeman* test controls the outcome and consideration should be given to each prong of the test. But one factor may weigh so heavily that it directs our ultimate conclusion. *State v. Mossman*, 294 Kan. 901, 908, 281 P.3d 153 (2012).

The first *Freeman* factor requires courts to consider the nature of the offense and the character of the offender, with particular regard to the degree of danger he or she presents to society. This consideration "is inherently factual, requiring examination of the facts of the crime and the particular characteristics of the defendant." *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 (2008).

The district court found that the first *Freeman* factor did not help Cabrera-Sanchez' claim that his sentence is grossly disproportionate to his crimes. In reaching this determination, the district court noted: (1) the young ages of the victims, (2) the State's K.S.A. 60-455 evidence which showed that Cabrera-Sanchez engaged in repeated sexual misconduct with the girls, (3) Cabrera-Sanchez' position of authority and trust over the victims, (4) Cabrera-Sanchez' denial that he committed the crimes, and (5) recidivism concerns with child-sex offenders.

The district court's conclusion regarding the serious nature of Cabrera-Sanchez' child-sex crimes and the danger he presents to society is consistent with our Supreme Court's remarks about sex crimes against children. Our Supreme Court has previously recognized that "[s]exual crimes committed against minors are particularly heinous and produce particularly devastating effects on the victims, including physical and

10

psychological harm." *State v. Ross*, 295 Kan. 424, 427, 284 P.3d 309 (2012). Further, the intent behind Jessica's Law is to remove perpetrators of child-sex crimes from society. *Seward*, 296 Kan. at 986-87. And the State has a particularly compelling interest to use extensive incarceration as a means of protecting youth from sexual offenders, given the high rates of recidivism among such offenders. *State v. Woodard*, 294 Kan. 717, 722, 280 P.3d 203 (2012).

Cabrera-Sanchez asserts the first *Freeman* factor weighs in his favor because "[t]here was no evidence of physical violence in this case, and no physical injury was documented. This case involved fondling and, at most, digital penetration." Cabrera-Sanchez also points us to *Seward*, which held that a defendant's hard 25 life sentence for rape and aggravated criminal sodomy was not cruel and unusual punishment. 296 Kan. at 992. Cabrera-Sanchez suggests that his "conduct does not come close to the egregiousness of Seward's conduct and therefore [he] does not deserve the same penalty as Seward."

Cabrera-Sanchez' attempts to minimize the serious nature of his conduct are not convincing. Cabrera-Sanchez abused his position of authority by sexually assaulting I.S. and J.S. during the first week their mother left them in his care. The victims were especially young. J.S. was eight years old when Cabrera-Sanchez touched her sexually. And I.S. was only seven when Cabrera-Sanchez raped her. The district court relied on evidence that Cabrera-Sanchez' sexual misconduct was not limited to these two isolated incidents, which Cabrera-Sanchez does not challenge on appeal. In fact, evidence showed that Cabrera-Sanchez raped I.S. on multiple occasions, he unnecessarily watched the girls while they bathed, he exposed himself to I.S., and he touched I.S. in an improper sexual manner.

Although the State presented no evidence of permanent physical injury, the evidence showed that I.S. did suffer short-term physical injuries after Cabrera-Sanchez

11

raped her. Moreover, Cabrera-Sanchez' argument ignores the psychological harm his actions have caused and will continue to cause. At trial, the State presented evidence that the girls began misbehaving in school after Cabrera-Sanchez' actions. And A.R. described an incident where I.S. began crying and refused to take a bath because that was one area of the home where Cabrera-Sanchez had touched I.S. in a sexually inappropriate way.

Cabrera-Sanchez' argument based on *Seward* is also not persuasive. In *Seward*, the defendant pled guilty to rape and aggravated criminal sodomy after his stepdaughter alleged that he penetrated her on several occasions and forced her to perform oral sex on him. Addressing Seward's case-specific challenge to his sentence, our Supreme Court determined that his concurrent hard 25 life sentences were not unconstitutionally disproportionate to his crimes. 296 Kan. at 987.

Even if the defendant's actions in *Seward* were arguably somewhat more egregious than Cabrera-Sanchez' conduct, § 9 of the Kansas Constitution Bill of Rights does not demand a strict proportionality between a crime and a sentence; it forbids only a sentence that is "'so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.'" 296 Kan. at 982. So § 9 did not require the district court to sentence Cabrera-Sanchez to a lesser sentence simply because a defendant who committed more egregious conduct received the same sentence. Additionally, rape of a child under 14 is considered a crime of "extreme sexual violence." K.S.A. 2019 Supp. 21-6815(c)(2)(F)(i)(c). And when considering the first *Freeman* factor, it is legally insignificant that a sexually violent crime could have been committed more violently. *State v. Newcomb*, 296 Kan. 1012, 1018, 298 P.3d 285 (2013).

As a result, we conclude the first *Freeman* factor weighs against Cabrera-Sanchez' argument that his sentence violates § 9.

12

The second *Freeman* factor requires courts to consider whether the punishment imposed for the offense in question is more severe than those for more serious offenses. 223 Kan. at 367. Pointing out that he would have received a lesser sentence for intentional second-degree murder, Cabrera-Sanchez argues that a comparison of his punishment with punishments imposed for more serious offenses shows a lack of proportionality.

In the past, our Supreme Court has rejected a claim identical to Cabrera-Sanchez' argument that his hard 25 life sentence for a Jessica's Law crime is disproportionately harsh when compared to the punishment for intentional second-degree murder. See *State v. Ochs*, 297 Kan. 1094, 1109-10, 306 P.3d 294 (2013). In *Ochs*, the court noted:

> "The fact that the penalty for certain categories of homicide may be less severe than the penalties for other, nonhomicide crimes does not automatically render the penalties for the nonhomicide crimes unconstitutional. There is no strict linear order of criminal activity that ranks all homicides as the most serious crimes and all nonhomicide crimes as less serious, with the corresponding penalties necessarily ranking in diminishing durations of imprisonment." 297 Kan. at 1110 (quoting *Woodard*, 294 Kan. at 723).

Our Supreme Court has also noted that "Jessica's Law is not the only Kansas statute that provides for more severe penalties for nonhomicide crimes than for certain categories of homicide." *Woodard*, 294 Kan. at 723. For example, aggravated kidnapping under K.S.A. 2019 Supp. 21-5408(b) is a severity level 1 offense and would carry a heavier sentence than reckless second-degree murder under K.S.A. 2019 Supp. 21-5403(a)(2), which is a severity level 2 offense. Additionally, rape of an adult under K.S.A. 2019 Supp. 21-5503(a)(1) or (a)(2) and intentional second-degree murder carry the same severity level. Therefore, it would seem proportionate that rape of a child under 14 years of age would carry a higher penalty than those two crimes.

13

Cabrera-Sanchez next suggests that, unlike homicide crimes which increase punishment based on the culpability of the offender, under Jessica's Law the presumptive hard 25 life sentence applies regardless of whether the defendant merely fondled the child or engaged in "multiple acts of sexual intercourse." But Cabrera-Sanchez fails to explain how this shows his sentence is disproportionate. Cabrera-Sanchez was found guilty of rape by engaging in sexual intercourse with a child who was under 14 years of age. While Cabrera-Sanchez was also found guilty of aggravated indecent liberties with a child by engaging in lewd fondling or touching, the district court ran the sentence for this crime concurrent with his primary offense of rape.

Additionally, Cabrera-Sanchez' argument that sentences for Jessica's Law crimes are disproportionate because the hard 25 life sentence applies "without any allowance for variation in facts of culpability" is factually incorrect because it ignores the sentencing court's ability to depart from the hard 25 life sentence. Under K.S.A. 2019 Supp. 21-6627(d), a sentencing judge may depart from the presumptive hard 25 life sentence if the judge "finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." But regardless, our Supreme Court has held that the Jessica's Law penalty for both rape and aggravated indecent liberties with a child are not disproportionately harsh when compared with the punishments for other Kansas offenses. *Seward*, 296 Kan. at 988 (rape and aggravated criminal sodomy); *Woodard*, 294 Kan. at 724 (aggravated indecent liberties involving lewd fondling or touching).

In light of our caselaw addressing these issues, we hold that Cabrera-Sanchez' sentence is not disproportionately harsh when compared with the punishments imposed for other offenses in Kansas and, therefore, the second *Freeman* factor weighs against his argument.

The third *Freeman* factor requires courts to consider how the punishment at issue compares to the punishment for the same offense in other jurisdictions. 223 Kan. at 367.

14

Our Supreme Court in *Seward* found that Kansas does not have the harshest penalty in the nation for the crime of rape committed by an adult against a child younger than 14. See 296 Kan. at 989-90. And Cabrera-Sanchez concedes that the third *Freeman* factor does not weigh in his favor.

Thus, because none of the three *Freeman* factors favor a conclusion that Cabrera-Sanchez' sentence violates § 9, his case-specific challenge to his sentence under the Kansas Constitution fails.

*Eighth Amendment to the United States Constitution*

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Amendment's protections have been extended to the states under the Fourteenth Amendment to the United States Constitution. See *Robinson v. California*, 370 U.S. 660, 667, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1962).

An Eighth Amendment challenge to a sentence as disproportionate and, therefore, cruel and unusual, falls into one of two general classifications:  (1) case-specific and (2) categorical. *Seward*, 296 Kan. at 983. A case-specific claim challenges the length of a sentence given all the circumstances in the particular case. The other classification, a categorical challenge, encompasses cases in which courts implement the proportionality standard based on certain categorical restrictions. 296 Kan. at 983. In this case, Cabrera-Sanchez raises only a case-specific challenge.

When analyzing a case-specific challenge, courts first compare the gravity of the offense to the severity of the sentence and determine whether such comparison leads to an inference of gross disproportionality. *Gomez*, 290 Kan. 858, Syl. ¶ 5. This comparison is a threshold determination. *Seward*, 296 Kan. at 983. "In the rare case in which this

15

threshold comparison leads to an inference of gross disproportionality, the court should then compare the [offender's] sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Gomez*, 290 Kan. 858, Syl. ¶ 5. If this comparative analysis confirms the threshold judgment that the sentence is grossly disproportionate, then the sentence is cruel and unusual punishment. 290 Kan. 858, Syl. ¶ 5.

Our Supreme Court has repeatedly noted that an "analysis of a § 9 challenge under the *Freeman* factors 'applies with equal force' to a case-specific Eighth Amendment challenge." *Seward*, 296 Kan. at 990 (quoting *Ross*, 295 Kan. at 429). Likewise, Cabrera-Sanchez' Eighth Amendment challenge rests on his arguments under the *Freeman* analysis and he presents no additional argument to support his federal constitutional claims. Having determined Cabrera-Sanchez' punishment is not grossly disproportionate under the *Freeman* analysis, we find that his punishment does not violate the Eighth Amendment.

Cabrera-Sanchez' concurrent hard 25 life sentences are not grossly disproportionate to his crimes under the Eighth Amendment to the United States Constitution or § 9 of the Kansas Constitution Bill of Rights. Accordingly, the district court did not err by dismissing Cabrera-Sanchez' cruel and unusual punishment claims in his K.S.A. 60-1507 motion.

*Ineffective assistance of trial and appellate counsel*

Cabrera-Sanchez' second and final contention on appeal is that the district court erred by dismissing his claims of ineffective assistance of trial and appellate counsel. The State responds that Cabrera-Sanchez failed to adequately brief this argument and, therefore, has abandoned the issue.

Since the district court held an evidentiary hearing on Cabrera-Sanchez' K.S.A. 60-1507 motion, we review the court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. However, we exercise unlimited review over the district court's conclusions of law and its decision to grant or deny the K.S.A. 60-1507 motion. *White v. State*, 308 Kan. 491, 504, 421 P.3d 718 (2018).

To prevail on a claim of ineffective assistance of counsel, a party must establish: (1) counsel's performance was deficient under the totality of the circumstances and (2) prejudice, meaning there is a reasonable probability the result of the proceeding would have been different without the deficient performance. *State v. Salary*, 309 Kan. 479, 483, 437 P.3d 953 (2019). "Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance." *State v. Burnett*, 300 Kan. 419, 452, 329 P.3d 1169 (2014).

After reciting the above standards in his brief, Cabrera-Sanchez' argument, in its entirety, consists of the following two sentences:

> "[T]he Appellant maintains that he was provided with ineffective assistance of counsel by both his appointed trial attorney and his appointed appellate attorney. The Appellant lists the various reasons in his *pro se* petition and alleges the cumulative effect of all those errors resulted in violations of his due process."

A point raised incidentally in a brief and not argued therein is deemed abandoned. *State v. Lowery*, 308 Kan. 1183, 1231, 427 P.3d 865 (2018). The failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *In re*

*Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018). Additionally, "assertions of ineffectiveness must be based on more than conclusory statements." *Breedlove v. State*, 310 Kan. 56, 68, 445 P.3d 1101 (2019).

Cabrera-Sanchez fails to argue how his counsels' performance was deficient for the 10 conclusory reasons listed in his original K.S.A. 60-1507 motion. Cabrera-Sanchez also fails to explain how the outcome of the proceedings would have been different without any of the alleged deficiencies. Because Cabrera-Sanchez raises this issue incidentally without arguing the merits of his claim, he has abandoned this issue.

But even if this claim was not abandoned, the testimony of Cabrera-Sanchez and his defense attorney at the evidentiary hearing held by the district court on his motion demonstrate that his contentions of ineffective assistance of counsel were either patently untrue or were contradicted by his counsel. Under the circumstances, it was no abuse of discretion, and hence no error, for the district court to dismiss his ineffectiveness claims as unproven.

Affirmed.