IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,047

STATE OF KANSAS,
*Appellee*,

v.

JEFFREY SCOTT COLLIER,
*Appellant*.

SYLLABUS BY THE COURT

Under K.S.A. 1993 Supp. 21-4720(b), when a defendant is sentenced for both off-grid and on-grid crimes, the sentencing court only has authority to impose the supervision period associated with the off-grid crime.

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed July 15, 2022. Affirmed.

*Kristen B. Patty*, of Wichita, was on the brief for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Jeffrey Scott Collier appeals from a district court's summary denial of his second pro se motion to correct an illegal sentence imposed for offenses committed in 1993. The sentencing court ordered a hard 15 life sentence with lifetime parole for a first-degree murder conviction and a consecutive 97-month prison term for an aggravated

1

robbery conviction. Collier claims the applicable law required 24 months of postrelease supervision because the aggravated robbery should have been designated as the primary crime for sentencing purposes. The State agrees with him. But we hold the district court correctly sentenced Collier and affirm the district court's denial of his motion.

FACTUAL AND PROCEDURAL BACKGROUND

The details of Collier's crimes are not relevant to this postrelease supervision issue but can be found in *State v. Collier*, 259 Kan. 346, 348-49, 913 P.2d 597 (1996) (*Collier I*). Our focus here concerns his resentencing after a string of appeals and remands. See *State v. Collier*, 263 Kan. 629, 637, 952 P.2d 1326 (1998) (*Collier II*). He did not appeal that resentencing at the time.

But several years later, Collier filed what became his first pro se motion to correct an illegal sentence. He claimed the sentencing court should have classified his prior convictions as nonperson offenses when imposing his prison term for the aggravated robbery. The district court summarily denied that motion and this court affirmed. See *State v. Collier*, 306 Kan. 521, 394 P.3d 1164 (2017) (*Collier III*). In 2020, he filed his second pro se motion, which appears to seek correction of the supervision term, which he asserts is required for the aggravated robbery sentence. That is the basis for this appeal.

His second motion gave few specifics. But it did recite nine "Declarations" about his case's procedural history from which an outline for a legal claim emerges. Important here, the fourth and fifth declarations discussed the presumptive guideline sentence for aggravated robbery as "a prison term of 92 to 103 months and postrelease supervision of 24 months" and the fact the district court "did not establish a postrelease supervision duration" for that conviction. His ninth declaration stated: "The initial sentence imposed

2

for . . . Aggravated Robbery . . . is still 97 months prison term with no postrelease supervision imposed."

Admittedly, his statements are challenging to decipher with precision. But when the fourth, fifth, and ninth declarations are read together, it is reasonable to infer Collier attacks the lifetime parole ordered by claiming the statute requires postrelease supervision. See K.S.A. 2021 Supp. 22-3504(a), (c)(1) (permitting correction at any time when a sentence is "ambiguous with respect to the time and manner in which it is to be served"). The district court, however, focused only on the 97-month prison term assigned to the aggravated robbery conviction to summarily deny the motion as successive, so it did not squarely address Collier's likely concern about postrelease supervision.

We view Collier's appeal as arguing the applicable law designates his aggravated robbery conviction as the "primary crime" for sentencing purposes and required the district court to impose 24 months of postrelease supervision. And he suggests the lifetime parole ordered at his 1998 resentencing on the murder conviction is illegal because "the only action the trial court was permitted to take to comply with the [m]andate" was reducing the mandatory minimum prison time attached to the life sentence.

Jurisdiction is proper. See K.S.A. 60-2101(b) (Supreme Court jurisdiction over direct appeals governed by K.S.A. 2021 Supp. 22-3601); K.S.A. 2021 Supp. 22-3601(b)(3)-(4) (life sentence and off-grid crime cases permitted to be directly taken to Supreme Court).

DISCUSSION

Under K.S.A. 2021 Supp. 22-3504(a), a court may correct an illegal sentence at any time while that sentence is being served. A sentence is illegal when it is "[i]mposed by a court without jurisdiction; . . . does not conform to the applicable statutory provision, either in character or punishment; or . . . is ambiguous with respect to the time and manner in which it is to be served at the time it is pronounced." K.S.A. 2021 Supp. 22-3504(c)(1).

An appellate court reviews a district court's summary denial of a motion to correct an illegal sentence de novo because it has the same access to the motion, records, and files as the district court. A sentence's legality is a question of law subject to unlimited review. *State v. Jackson*, 314 Kan. 178, 179-80, 496 P.3d 533 (2021); see also *State v. Ross*, 295 Kan. 1126, Syl. ¶ 2, 289 P.3d 76 (2012) ("Interpretation of a statute raises a question of law over which an appellate court has unlimited review.").

As mentioned, Collier and the State agree the aggravated robbery sentence is illegal. They believe the applicable law required the district court to impose a postrelease supervision term by designating the aggravated robbery as the primary crime. They rely on K.S.A. 1993 Supp. 21-4720(b), which was in effect at the time of Collier's sentencing and addressed situations when a sentencing judge imposes multiple sentences consecutively. Subsection (b)(1) provided:  "[T]he consecutive sentences shall consist of an imprisonment term and a supervision term. The postrelease supervision term will be based on the primary crime." And subsection (b)(2) stated, "*An off-grid crime shall not be used as the primary crime* in determining the base sentence when imposing multiple sentences." (Emphasis added.) And subsection (b)(7) provided:  "If the sentence for the consecutive sentences is a prison term, the postrelease supervision term is a term of postrelease supervision as established for the primary crime." In their view, Collier's off-

4

grid crime of first-degree murder could not be used as the primary crime when deciding the supervision period because of the italicized text quoted above.

But we read the applicable provisions differently. K.S.A. 1993 Supp. 21-4720(b) declares:

"In cases where consecutive sentences may be imposed by the sentencing judge, the following shall apply:

(1) When the sentencing judge imposes multiple sentences consecutively, the consecutive sentences shall consist of an imprisonment term and a supervision term. The postrelease supervision term will be based on the primary crime.

(2) The sentencing judge must establish a base sentence for the primary crime. The primary crime is the crime with the highest crime severity ranking. An off-grid crime shall not be used as the primary crime in determining the base sentence when imposing multiple sentences. If sentences for off-grid and on-grid convictions are ordered to run consecutively, the offender shall not begin to serve the on-grid sentence until paroled from the off-grid sentence. . . .

(3) The base sentence is set using the total criminal history score assigned.

. . . .

(7) If the sentence for the consecutive sentences is a prison term, the postrelease supervision term is a term of postrelease supervision as established for the primary crime."

The use of the term "postrelease supervision" in subsections (b)(1) and (b)(7) is not obvious from its plain language, but *Ross* resolved that ambiguity. The *Ross* court held:

5

"This section is nonsensical if the phrase 'postrelease supervision term' in K.S.A. 21-4720(b)(2) refers to a period of postrelease supervision under K.S.A. 2008 Supp. 22-3717(d) because . . . off-grid crimes are followed by parole under K.S.A. 2008 Supp. 22-3717(b). Accordingly, the phrase, 'postrelease supervision term' in K.S.A. 21-4720(b)(2) must refer more generally to the supervision period that follows the defendant's release from prison, regardless if that is termed 'parole' or 'postrelease.'" 295 Kan. at 1133.

*Ross* dealt with K.S.A. 21-4720(b)(2), which has slightly different language than K.S.A. 1993 Supp. 21-4720(b)(2), but the use of "postrelease supervision" in Collier's case does not differ from that in *Ross*. And since the statutory meaning of "postrelease supervision" in K.S.A. 1993 Supp. 21-4720(b)(1) and (b)(7) is the same as K.S.A. 21-4720(b)(2), the *Ross* holding makes the remaining statutory language clear. In other words, under subsection (b)(1), "consecutive sentences shall consist of an imprisonment term and a supervision term. The . . . supervision term will be based on the primary crime." Subsection (b)(2) states "[t]he primary crime is the crime with the highest crime severity ranking," which for the narrow purpose of determining the correct supervision term in Collier's case is the first-degree murder, an off-grid crime. This makes his supervision term lifetime parole. See K.S.A. 1993 Supp. 22-3717(b).

The parties rely on K.S.A. 1993 Supp. 21-4720(b)(2) to press their point in favor of an illegal sentence, but they do not consider the modifier "*in determining the base sentence* when imposing multiple sentences." (Emphasis added.) K.S.A. 1993 Supp. 21-4720(b)(2). And when the relevant portion of the statute is read as a whole, it means a defendant's base sentence has nothing to do with the supervision term in cases involving multiple convictions. See K.S.A. 1993 Supp. 21-4720(b)(3) ("The base sentence is set using the total criminal history score assigned.").

We also note the Legislature replaced the term "primary crime" with "longest supervision term imposed for any of the crimes" in subsection (b)(1) and added the language of "the postrelease supervision term will be based on the off-grid crime" in subsection (b)(2) in 1994. L. 1994, ch. 291, § 59; K.S.A. 2021 Supp. 21-6819 (recodified; same). But the 1994 amendments do not change the statute's substance. Indeed, they reinforce the 1993 legislation's meaning as we describe it.

Here, Collier's primary crime for the purpose of K.S.A. 1993 Supp. 21-4720(b)(1) as we construe it is first-degree murder. And under subsection (b)(2), his off-grid crime can be used when deciding the supervision term—but not the base sentence. The district court correctly sentenced Collier under the applicable law to a hard 15 life imprisonment with lifetime parole for the first-degree murder conviction and a consecutive 97-month imprisonment with no postrelease supervision term for the aggravated robbery conviction. Like in *Ross*, when Collier was sentenced for both off-grid and on-grid crimes, the sentencing court only had authority to impose the supervision period associated with the off-grid crime.

Collier also implies the so-called mandate rule prevented the resentencing court from relying on K.S.A. 1994 Supp. 21-4720(b)(2) ("[T]he postrelease supervision term will be based on the off-grid crime.") and from imposing parole when it modified the mandatory minimum for the life sentence in 1998. He also suggests the parole to be ordered under the amendments to K.S.A. 21-4720 would be a prohibited ex post facto application of the law. We disagree.

Lifetime parole was the appropriate supervision period under the applicable 1993 statute, so the resentencing court was within its statutory authority to correct the supervision term as required. See *State v. Clark*, 313 Kan. 556, 576, 486 P.3d 591 (2021) (holding trial court that imposed illegal sentence by strictly complying with Court of

7

Appeals mandate committed a technical error that required resentencing to correct illegality); *State v. Bailey*, 313 Kan. 895, Syl., 491 P.3d 1256 (2021) ("A litigant waives or abandons an issue by not supporting an argument with pertinent authority or explaining why the argument is sound despite a lack of pertinent authority."). Moreover, even if the district court were required to impose a postrelease supervision period to follow Collier's release from the on-grid crime, as the dissent argues it should, that would not exempt Collier from the lifetime parole requirement. The plain language of K.S.A. 1993 Supp. 22-3717 at the time of Collier's crimes mandated that the end of his prison term for the off-grid conviction, if any, must be followed by lifetime parole. See *State v. Claiborne*, 315 Kan. 399, 400, 508 P.3d 1286 (2022) ("'In Kansas, off-grid crimes are not associated with periods of postrelease supervision but instead are followed by life parole.'").

Turning to that argument, the dissent argues the crime with "the highest crime severity ranking" is not necessarily "the crime we deem most odious or that carries the longest sentence." Slip op. at 10 (Rosen, J., dissenting). The dissent relies on *State v. Woodard*, 294 Kan. 717, 280 P.3d 203 (2012), but that reliance is misplaced. In *Woodard*, the defendant appealed from three life sentences with a mandatory minimum term of 25 years following his guilty plea to three counts of aggravated indecent liberties with a child. He claimed these sentences constituted cruel and unusual punishment and he compared punishment for Jessica's Law violations with the penalties for more serious crimes in Kansas like murder, arguing his crimes were less serious than homicide but was punished more severely. The *Woodard* court rejected his argument and held:

> "This argument suffers from several flaws. In the first place, it assumes that murderers necessarily receive more lenient sentences in Kansas than violators of Jessica's Law. This is not the case. In fact, the Kansas Criminal Code sets out a list of transgressions that constitute capital murder, which is an off-grid offense. Capital murder

8

is subject to punishment by death. The penalty for homicide in Kansas may thus be much more severe than the penalties under Jessica's Law. *The fact that the penalty for certain categories of homicide may be less severe than the penalties for other, nonhomicide crimes does not automatically render the penalties for the nonhomicide crimes unconstitutional. There is no strict linear order of criminal activity that ranks all homicides as the most serious crimes and all nonhomicide crimes as less serious, with the corresponding penalties necessarily ranking in diminishing durations of imprisonment.* [Citations omitted.]" (Emphasis added.) 294 Kan. at 723.

Collier's argument focuses only on the statute setting postrelease supervision, not whether a punishment is cruel and unusual and therefore constitutionally invalid. Similarly, the dissent's reference to *State v. Walker*, 283 Kan. 587, 153 P.3d 1257 (2007), misses the point. The primary crime discussed in *Walker* was used for the purposes of calculating the base sentence. See 283 Kan. at 614 ("[H]e contends that the sentencing court erred in ranking the primary crime for purposes of calculating the base sentence."). But postrelease supervision was not an issue in *Walker*.

The dissent's confusion seems to come from a post-1993 understanding of what has constituted "the primary crime," a term which has been used exclusively to calculate a base sentence since 1994. But Collier's case concerns the statute's 1993 version. And K.S.A. 1993 Supp. 21-4720(b) uses the term "primary crime" in two ways. First, the primary crime as used in one sense determines the postrelease supervision term. See K.S.A. 1993 Supp. 21-4720(b)(1) ("When the sentencing judge imposes multiple sentences consecutively, the consecutive sentences shall consist of an imprisonment term and a supervision term. The postrelease supervision term will be based on the primary crime."). Second, the "primary crime" used in the other sense determines the base sentence. K.S.A. 1993 Supp. 21-4720(b)(2) ("An off-grid crime shall not be used as the primary crime in determining the base sentence when imposing multiple sentences."). In 1994, the Legislature replaced the term "primary crime" as used in the first sense in

9

subsection (b)(1) with the phrase "longest supervision term imposed for any of the crimes." As a result, only the second sense of primary crime has been used since then, in calculating the base sentence. Although the Legislature's use of a single term in two different senses in the 1993 statute is unusual, the parole requirement for off-grid crimes contained in K.S.A. 1993 Supp. 22-3717 demonstrates that the 1994 amendment clarified the law, rather than changed it.

Affirmed.

* * *

ROSEN, J., dissenting: My reading of K.S.A. 1993 Supp. 21-4720(b) and the earlier decisions of this court leads me to disagree with the majority's analysis and conclusion. I would agree with the argument the parties jointly presented to this court and reverse the district court.

The 1993 version of the statute stated that postrelease supervision was to be "based on the primary crime." K.S.A. 1993 Supp. 21-4720(b)(1). The statute went on to state that the primary crime was "the crime with the highest crime severity ranking" and an off-grid crime was "not [to] be used as the primary crime in determining the base sentence when imposing multiple sentences." K.S.A. 1993 Supp. 21-4720(b)(2).

It is seductive to think that the crime with "the highest crime severity ranking" must be the crime we deem most odious or that carries the longest sentence. But this is a subjective assessment that this court has consistently rejected.

In *State v. Woodard*, 294 Kan. 717, 723, 280 P.3d 203 (2012), we held: "There is no strict linear order of criminal activity that ranks all homicides as the most serious

10

crimes and all nonhomicide crimes as less serious, with the corresponding penalties necessarily ranking in diminishing durations of imprisonment." We have consistently followed this holding. See, e.g., *State v. Spear*, 297 Kan. 780, 801-02, 304 P.3d 1246 (2013); *State v. Seward*, 296 Kan. 979, 987, 297 P.3d 272 (2013); *State v. Britt*, 295 Kan. 1018, 1034, 287 P.3d 905 (2012). That this principle was followed in cases relating to cruel and unusual punishment does not diminish the relevance of that principle to this case: we do not give a statutory construction that benefits the prosecution in one situation and a contrary construction so that it will also benefit the prosecution in a different situation.

How was the district court to sentence Collier in 1993? The off-grid crime had no severity ranking; by what rationale could the court have found it to be the "crime with the highest crime severity ranking"? See K.S.A. 1993 Supp. 21-4702(b)(2). There is simply no basis for determining that murder was the crime with the "highest crime severity ranking" as of 1993. It had *no* severity ranking. As recently as two years ago, we explained that the severity level of a crime is determined by determining the "intersection of the crime severity ranking of a current crime of conviction and an offender's criminal history classification." *State v. Fowler*, 311 Kan. 136, 140, 457 P.3d 927 (2020). Where there is no grid, there is no corresponding means of calculating the severity ranking. This is consistent with our statement in *State v. Torres*, No. 99,308, 2009 WL 862166, at *2 (Kan. 2009) (unpublished opinion), that the "primary crime" means "the on-grid crime with the highest severity level."

In *State v. Walker*, 283 Kan. 587, 153 P.3d 1257 (2007), this court expressly agreed with my understanding of the statute and disagreed with the conclusion the court is reaching today. In *Walker*, this court noted that felony murder was an off-grid crime. The court went on to hold that felony murder could not be the "primary crime" under K.S.A. 2006 Supp. 21-4720(b)(2) because it was an off-grid crime. 283 Kan. at 615.

11

The majority in the present case attempts to distinguish *Walker*, but the asserted distinction simply creates two different rules for interpreting the same language in the same statute. I contend that *Walker* was correctly decided and should remain controlling law.

In 1994, our Legislature amended K.S.A. 21-4720(b) to add language to sections (1) and (2). This new language stated that postrelease supervision would be for the longest supervision term for "any of the crimes" of conviction, and "the postrelease supervision term will be based on the off-grid crime." This language is now found in K.S.A. 2021 Supp. 21-6819(b)(1) and (2).

The majority contends the 1994 amendment simply "clarified" and "reinforce[d]" the law already in effect. Slip op. at 7, 10. The amendment was not "clarifying" or "reinforcing" language; it was language intended to change the peculiar, and probably unintended, results flowing from the earlier language. The Legislature does not clarify and reinforce statutes that already have an uncontested meaning. If the 1994 amendment is to be considered simply a clarification of an ambiguity, then this court should apply the rule of lenity, which requires courts to construe ambiguous statutes in favor of the accused. See, e.g., *State v. Gensler*, 308 Kan. 674, 680, 423 P.3d 488 (2018). If the 1993 version of the statute was ambiguous (which I don't think it was), then Collier should benefit from the reading most favorable to him.

I recognize that the language of K.S.A. 1993 Supp. 21-4720(b) and this court's consequent reading of that plain language in *Walker* can produce results that the Legislature did not contemplate and that appear contrary to our general sense of how criminal behavior should be penalized and supervised. It was the role of the Legislature—not of this court in 2022—to amend that language, and that is precisely what the

12

Legislature did in 1994. Collier was sentenced for crimes committed under the earlier version of the statute, and this court should recognize the sentence was illegal and should remand the case for correction.

STANDRIDGE, J., joins the foregoing dissenting opinion.